548 So.2d 1317 (1989)
Gabe BYRD and Ella Mae Byrd
v.
J. Elmer NIX, M.D.
No. 07-58584.
Supreme Court of Mississippi.
September 13, 1989.
Roy Joseph Perilloux, Jackson, Roy O. Parker, Roy O. Parker & Associates, Tupelo, for appellant.
Ferrell Tadlock, Heber A. Ladner, Jr., Ladner & Associates, Stephen Paul Kruger, Upshaw Williams Firm, Jackson, for appellee.
Before ROY NOBLE LEE, C.J., and ANDERSON and BLASS, JJ.
ANDERSON, Justice, for the Court:
Gabe and Ella Mae Byrd (the Byrds), plaintiffs below and appellants here, sued Dr. J. Elmer Nix (Dr. Nix), defendant below and appellee here, for medical malpractice and sought to recover for personal injury, loss of income, loss of consortium and other damages. Specifically, the Byrds alleged that Dr. Nix failed to exercise the appropriate standard of care in the post-operative stage of Gabe Byrd's (Gabe) treatment. Aggrieved by the verdict of the jury in favor of Dr. Nix, the Byrds perfected this appeal. Finding no merit to any of the issues, we affirm the judgment of the lower court. In affirming, we address one of the five assigned errors because the issue of telephonic testimony raises a question of first impression for the Court.

FACTS
On Thursday, February 17, 1983, Dr. Nix performed spinal fusion surgery on Gabe's *1318 back in Hinds General Hospital located in Jackson, Mississippi. This was Gabe's fourth surgery on his back and the second performed by Dr. Nix. Approximately one hour after surgery, Dr. Nix left the hospital and did not examine Gabe again until the following Wednesday, February 23, 1983.
The Byrds alleged that when Dr. Nix allowed a six-day period to elapse before post-surgical examination, he deviated from the accepted medical standards and thereby caused Gabe's physical impairment. Specifically, The Byrds alleged that Gabe suffered, among other things, a permanent neurogenic bladder, permanent drop foot, a shrunken left leg, and sexual impotence.
Dr. Nix explained that his regular hospital rounds were scheduled for Wednesdays. He was associated, however, with several other physicians and one of Dr. Nix's partners examined Gabe on the Friday morning following his surgery.
Gabe's medical chart evinced that his overall progress was satisfactory, but it did not show that a neurological examination was performed on Gabe immediately after surgery. The Byrds' expert, Dr. Roy Selby, testified by videotape deposition at trial, and opined that Gabe had a hematoma (blood clot) immediately after surgery which caused neurological problems. Dr. Selby testified that a neurological examination would have prevented Gabe's impairment and that Dr. Nix deviated from accepted medical standards in not performing such an examination.
Dr. Nix' expert, Dr. Patrick Barrett, testified contrary to Dr. Selby's opinion. Dr. Barrett testified further that the "hemovac" device inserted in Gabe after surgery served as a preventive measure of hematoma. The Byrds argued that Dr. Barrett's testimony raised a new issue and therefore, they had a right to offer rebuttal testimony. In an effort to rebut the newly-raised issue, the Byrds sought to offer the telephonic testimony of Dr. Selby, located in Texarkana, Texas. The Byrds were ready to present such testimony by speaker-phone which had been installed and tested in the courtroom.
The court was willing to allow the Byrds to offer in-court rebuttal testimony, but would not permit Dr. Selby to testify by telephone. In overruling the Byrds' motion the court stated:
In this particular case, you are asking that a witness testify, but just not be present in the courtroom. As I have stated to you in camera, I still believe that the fact that the jury is not able to view the witness, not able to determine the demeanor and the physical appearance of the witness, I certainly don't mean to indicate that there would be anything improper done in the event the Court should allow this, but in practicality the Court would have no way of really knowing the identity of the person on the other end of the telephone without being able to see them and hear them and swear them in. The court would have absolutely no control over the witness. Not only would they be not in the courtroom, but even outside the jurisdiction of the court; and the witness might take off on any course of conduct that he should see fit, and there would be absolutely no remedy this court would have should the witness do so. Documents in evidence which the defendant may wish to cross examine the witness on would not be able to be presented to the witness. He could not see it or review those documents, and the process would be just much too cumbersome and to [sic] inexact for the court to permit this type of testimony to be brought before the jury. So the motion would be overruled.
The Byrds then informed the court that Dr. Selby suffered from a severe heart condition, which prohibited him from traveling, and as a rule, testified only by deposition. The court found that the Byrds knew of Dr. Selby's condition prior to employing him as an expert, and that his condition neither cured nor diminished the problem with a witness testifying by telephone.
The Byrds made a proffer that if allowed to testify, Dr. Selby would state:
[H]e was well aware that the hemovac or two hemovacs that were placed in the *1319 body of Gabe Byrd on February the 17, 1983 were there, and that the hemovac would not prevent the epidural blood clot which Dr. Selby said was the most reasonable or probable cause of this man's problem. That he is very familiar with hemovacs, and in fact has invented a hemovac that he purports to say is an improvement over the ones that they are using now. That he is well aware of the purpose of the hemovac and what they do. He is well aware that the man had them in his body, and that he would testify that would not change his opinion in any way whatsoever, but that it is most probable that Gabe Byrd did have an epidural or extradural hematoma after he was operated on by Dr. Nix on February 17, 1983, and that he had all of the symptoms of one. That is, he had numbness of his left leg; he had constant problems of voiding; and he had bladder problems; and that the hematoma probably caused pressure on the nerve roots that causes [Gabe's] present disability at this time, which is a permanent neurogenic bladder, permanent drop foot, a shrunken left leg, and sexual impotence.

I.
Unlike various other rules for testimony given at trial, no law or rule exists in Mississippi which allows a witness to testify by telephone. MRCP 43(a) provides that "in all trials the testimony of witnesses shall be taken orally in open court, unless otherwise provided by these rules or the Mississippi Rules of Evidence (MRE)."
MRE 611(a) provides:
The court shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of the truth, (2) avoid needless consumption of time, and (3) protect witnesses from harassment or undue embarrassment.
At trial Byrd argued that the word "mode" means by telephone or any other method the court desires in its discretion. The comment states, however, that "subsection (a) is designed in part to give the judge the discretion to determine whether presentation of the evidence must be in question-and-answer form or whether it may be in narrative form."
Other jurisdictions have addressed the issue of telephonic testimony. Florida allows telephonic testimony of non-party witnesses at trial. The Florida Bar: In Re Rules Of Summary Procedure, 461 So.2d 1344, 1345 (Fla. 1984). The Wisconsin Supreme Court has adopted a series of rules governing telephone procedures at the trial and appellate stages. See e.g., Matter of W.J.C., 124 Wis.2d 238, 369 N.W.2d 162 (Wis.App. 1985) (court appointed psychiatrist and psychologist, each of whom had already filed a full report, permitted to testify by telephone in a civil commitment hearing); Town of Geneva v. Tills, 129 Wis.2d 167, 384 N.W.2d 701 (Wis. 1986) (the court held that while telephonic testimony may be permitted in circumstances in which the right to a fair trial will not be jeopardized, such testimony there was improperly allowed because of its adverse effect on the right of cross-examination).
Generally, special circumstances such as exigency, consent and knowledge of the witness' identity and credentials, have dictated the admissibility of telephonic testimony. See e.g., Ferrante v. Ferrante, 127 Misc.2d 352, 485 N.Y.S.2d 960 (Sup.Ct. 1985) (testimony from Florida via a telephone call held admissible where ninety-two year-old plaintiff was unable to travel); Elson v. State, 633 P.2d 292 (Alaska App. 1981), aff'd 659 P.2d 1195 (Alaska 1983) (state chemist permitted to testify in sentencing hearing by telephone as to the contents of his laboratory report in a manner consistent with his trial testimony where defense counsel already had a copy of the report); State v. Aldape, 307 N.W.2d 32, 43 (Iowa 1981) (suppression hearing conducted in part by telephone finding was proper since the witnesses were properly sworn before they testified and were thoroughly cross-examined by defense counsel).
In the absence of exigency or consent, telephonic testimony generally has not *1320 been allowed. See e.g., Aqua Marine Products, Inc. v. Pathe Computer Control Systems Corp., 551 A.2d 195, 200, 229 N.J. Super. 264 (1988) (remanded for a new trial because the lower court allowed telephonic testimony in the absence of special circumstances); Rose v. State, 294 Ark. 279, 742 S.W.2d 901, 905 (1988) (the court excluded the testimony of an out-of-state police officer in a Miranda hearing); Sherman v. Com. Unemp. Compensation Bd. of Review, 114 Pa.Cmwlth. 424, 539 A.2d 23, 25 (1988) (the court held that absent regulations governing telephonic hearings, it could not uphold evidence adduced therein over proper and timely objection of a claimant); State ex rel. Juvenile. Dept. of Multnomah County v. Gates, 86 Or. App. 631, 740 P.2d 217, 218 (1987) (the court reversed a trial court order allowing the telephonic testimony of out-of-state caseworkers and a psychologist in an action brought to terminate parental rights, reasoning that testimony by telephone was not authorized by statute or procedural rule, and denial of an opportunity to observe the witnesses was manifestly prejudicial).

CONCLUSION
In recognizing the different positions taken on the matter, we hold that the admissibility of telephonic testimony is within the sound discretion of the trial judge and is not reversible unless such discretion is abused. In the instant case the facts do not evince that the trial judge abused his discretion in not allowing Dr. Selby to testify by telephone. The judgment of the lower court, therefore, is affirmed. We find no merit to the remaining statements of issue.
AFFIRMED.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and PRATHER, ROBERTSON, SULLIVAN, PITTMAN and BLASS, JJ., concur.