120 P.3d 210 (2005)
211 Ariz. 255
In re MH XXXX-XXXXXX
No. 1 CA-MH 05-0007.
Court of Appeals of Arizona, Division 1, Department E.
September 22, 2005.
*211 Andrew P. Thomas, Maricopa County Attorney, Phoenix, By Lisa Stelly Wahlin, Deputy County Attorney, for Appellee.
James J. Haas, Maricopa County Public Defender, Phoenix, By Karen Kemper, Deputy Public Defender, for Appellant.

OPINION
BARKER, J.
¶ 1 Appellant appeals a court order for involuntary mental health treatment. She argues that the trial court's decision to allow telephonic testimony at her hearing was error and requires reversal. We disagree and accordingly affirm.

Facts and Procedural History
¶ 2 In December 2004, appellant's sister became concerned about appellant's recent behavior. Those concerns led her to file an Application for Involuntary Evaluation. Ariz.Rev.Stat. ("A.R.S.") § 36-520 (2003). That application stated appellant had shaved her head, stopped paying her bills and rent, started wandering around at night, and appeared to be hearing voices. Also, according to the application, appellant had recently disappeared for two weeks, lost her job, started obsessively cleaning her head, and mentioned that "God [was] sending her a chariot to pick her up."
¶ 3 As a result of that application, two individuals went to appellant's home to evaluate her. Id. The report filed after that evaluation stated "it appeared as though [appellant] might have been responding to internal stimuli." Also, appellant "acknowledge[d] the belief that God [would] be sending a chariot to go get her." Finally, appellant declined an offer for another evaluation, stating that "she didn't have a mental illness or need to see a psychiatrist."
¶ 4 A Petition for Court-Ordered Evaluation was filed, A.R.S. §§ 36-521, -523, and a Detention Order for Evaluation and Notice was granted. A.R.S. § 36-529. Appellant was detained and evaluated by two doctors. Those doctors filed affidavits reciting their findings. The first affidavit, filed by Dr. Andrew Parker, stated appellant's "affect is *212 inappropriate. Her mood is labile, with depression, elevation and irritability." Dr. Parker also stated that appellant is "guarded, paranoid, [and her] attention and concentration are distracted .... [Appellant's] insight is poor, she is confused, and judgment is not intact." Dr. Parker concluded that appellant had a severe mental disorder that "substantially impair[ed][her] capacity to make an informed decision regarding treatment."
¶ 5 The other doctor, Dr. Carol Olson, stated appellant's "insight and judgment appear poor." Dr. Olson found appellant's mood to be "mildly irritable" and her "thinking... difficult to assess." Dr. Olson reached the same conclusion as Dr. Parker that appellant had a severe mental disorder that "substantially impair[ed][her] capacity to make an informed decision regarding treatment."
¶ 6 On January 10, 2005, there was a hearing regarding the petition for treatment. One of the witnesses scheduled for the hearing was appellant's sister. At the time of the hearing, appellant's sister lived in Alabama and was not present at the hearing; the State sought permission to have the sister testify telephonically. Appellant's attorney objected to the telephonic testimony, arguing that she had not had the opportunity to interview the sister. The court chose to delay the hearing for one day to give appellant's counsel an opportunity to interview the sister.
¶ 7 The next day appellant's counsel renewed her objection to the telephonic testimony. The court heard argument on the issue and opted to allow the telephonic testimony. The court found that "numerous safeguards [were] in place"; therefore, the testimony should be allowed. Those safeguards included multiple doctors evaluating appellant and agreeing that the relevant standards had been met. Also, the court found that this type of hearing operates on a "very truncated time table." Therefore, the sister had not been given adequate time to "plan to come in ... to testify."
¶ 8 The hearing then proceeded with a preliminary examination of appellant's sister. The court asked the sister if she had any notes in front of her or if there was anyone else in the room with her. The sister replied "no" to both questions. The court then asked appellant's daughter to identify the voice on the telephone.
Court: Did you hear the voice of the person talking at the other end of the phone?
Daughter: Yes.
Court: Can you identify that person?
Daughter: That's my aunt ....
Court: Do you have any concerns that that may be some other person, other than [your aunt]?
Daughter: No.
After this identification, appellant's sister resumed her testimony. She recounted the unusual behavior appellant had recently exhibited. The two doctors then testified, both stating that appellant suffered from a severe mental disorder. The final witness was appellant's daughter. The daughter testified as to appellant's unusual behavior.
¶ 9 At the conclusion of the witness' testimony and argument by counsel, the court made "the following findings by clear and convincing evidence." "[Appellant], as a result of a mental disorder, is persistently or acutely disabled ... [she] is in need of psychiatric treatment and she is either unwilling or unable to accept voluntary treatment." The court ordered appellant to "undergo treatment in a combined inpatient/outpatient treatment program." See A.R.S. § 36-540.
¶ 10 Appellant filed a timely notice of appeal. We have jurisdiction pursuant to A.R.S. § 36-546.01 (2003).

Discussion
¶ 11 The only issue on appeal is whether the trial court erred by allowing telephonic testimony at the hearing on the petition for treatment. We consider the statutory scheme, Arizona rules, and the constitutional issues.

1. The Statutory Scheme
¶ 12 According to A.R.S. § 36-539(B) (2003), at the hearing "[t]he patient and his attorney shall be present ... and the patient's attorney may subpoena and cross-examine *213 witnesses and present evidence." Also, at the hearing there must be "testimony of two or more witnesses acquainted with the patient at the time of the alleged mental disorder and testimony of the two physicians who performed examinations in evaluation of the patient." Id. These requirements "are in addition to all rules of evidence and the Arizona rules of civil procedure." A.R.S. § 36-539(D). In cases, such as this one, where a significant liberty interest is at stake, these "statutory requirements must be strictly adhered to." Coconino County No. MH 1425, 181 Ariz. 290, 293, 889 P.2d 1088, 1091 (1995); see Coconino County No. MH 95-0074, 186 Ariz. 138, 139, 920 P.2d 18, 19 (App.1996).
¶ 13 In this case, two physicians, appellant's daughter, and appellant's sister testified at the hearing. The doctors and appellant's daughter were present in the courtroom. Appellant's sister was not present, testifying instead via telephone. Appellant argues that the telephonic testimony violated the statutory scheme. We disagree.
¶ 14 Arizona courts "follow fundamental principles of statutory construction, the cornerstone of which is the rule that the best and most reliable index of a statute's meaning is its language and, when the language is clear and unequivocal, it is determinative of the statute's construction." Janson v. Christensen, 167 Ariz. 470, 471, 808 P.2d 1222, 1223 (1991); see MH 95-0074, 186 Ariz. at 139, 920 P.2d at 19 ("When the legislature has spoken with such explicit direction, our duty is clear."). The statute providing the requirements for a hearing on a petition for court-ordered treatment states that "[t]he patient and his attorney shall be present at all hearings." A.R.S. § 36-539(B) (emphasis added). There is no requirement that the other witnesses also be present. Id. We will not read a presence requirement into the statute. See Desert Wide Cabling & Installation, Inc. v. Wells Fargo & Co., N.A., 191 Ariz. 516, 517, ¶ 6, 958 P.2d 457, 458 (App. 1998) (stating courts will not read provisions into a statute where no legislative intent is present). We must not "inflate, expand, stretch or extend a statute to matters not falling within its expressed provisions." City of Phoenix v. Donofrio, 99 Ariz. 130, 133, 407 P.2d 91, 93 (1965). Accordingly, the statute does not require that a witness be personally present.

2. Arizona Rules
¶ 15 Beyond compliance with the relevant statutes, a hearing for court-ordered treatment must also be conducted in conformity with the Arizona Rules of Civil Procedure and the Arizona Rules of Evidence. See A.R.S. § 36-539(D) ("The requirements of subsection B are in addition to all rules of evidence and the Arizona rules of civil procedure, not inconsistent with subsection B."). "We interpret court rules according to the principles of statutory construction." State v. Aguilar, 209 Ariz. 40, 47, ¶ 23, 97 P.3d 865, 872 (2004). Thus, once again we start with the plain language of the rules. Janson, 167 Ariz. at 471, 808 P.2d at 1223. Neither the Arizona Rules of Civil Procedure nor the Arizona Rules of Evidence specifically prohibit, or even address, telephonic testimony in this context.[1] However, two rules potentially apply. First, Arizona Rule of Evidence 611(a) provides that the court "shall exercise reasonable control over the mode and order of interrogating witnesses." (Emphasis added.) There are no Arizona cases that construe this rule in the context of whether it *214 permits telephonic testimony. Though "mode" has multiple meanings, the dictionary definition applicable here is "a form or manner of expression." Merriam-Webster's Collegiate Dictionary 745 (10th ed.2001); see Webster's New Universal Unabridged Dictionary 1154 (2nd ed.1983) ("manner of existing or acting; way; method or form"). Telephonic testimony, as contrasted with in-person testimony, is certainly a "form or manner of expression." Thus, Rule 611(a) could be construed by its terms to permit telephonic testimony.[2]
¶ 16 The second potentially applicable rule is Arizona Rule of Civil Procedure 43(f). It provides that "[i]n all trials the testimony of witnesses shall be taken orally in open court, unless otherwise provided by these rules or the Arizona Rules of Evidence." (Emphasis added.) Like Rule 611(a), Rule 43(f) does not directly address in-court as contrasted with telephonic testimony. As with Rule 611(a), we are also unable to locate any Arizona authority regarding the construction of Rule 43(f) in this setting. We note, too, that the context for our consideration of Rule 43(f) is Arizona Rule of Civil Procedure 1: The rules "shall be construed to secure the just, speedy, and inexpensive determination of every action."
¶ 17 A similar form of the language from Rule 43(f) ("taken orally in open court") is also in Federal Rule of Civil Procedure 43(a) ("taken in open court"). Earlier cases construed that rule both to permit and preclude telephonic testimony.[3]See Murphy v. Tivoli Enters., 953 F.2d 354, 359 (8th Cir.1992) (rejecting telephonic testimony); Official Airlines Guides, Inc. v. Churchfield Publ'ns, Inc., 756 F.Supp. 1393, 1399 n. 2 (D.Or.1990) (permitting telephonic testimony).
¶ 18 The same divergent results occur in state courts. See Gust v. Gust, 345 N.W.2d 42, 44 (N.D.1984) (prohibiting telephonic testimony); Murphy, 953 F.2d at 359 n. 2 (citing cases prohibiting telephonic testimony); Barry v. Lindner, 119 Nev. 661, 81 P.3d 537, 541 n. 5 (2003) (citing cases permitting telephonic testimony, particularly when special circumstances are met); Byrd v. Nix, 548 So.2d 1317, 1320 (Miss.1989) ("In recognizing the different positions taken on the matter, we hold that the admissibility of telephonic testimony is within the sound discretion of the trial judge.").
¶ 19 Considering Rule 611(a), Rule 43(f), and the context from Rule 1, we do not determine that Arizona's rules necessarily preclude telephonic testimony in this circumstance.

3. Constitutional Issues
¶ 20 There are, however, constitutional issues to consider. Several concurring opinions from the United States Supreme Court spell out the need for procedural due process in involuntary commitment hearings. Parham v. J.R., 442 U.S. 584, 627, 99 S.Ct. 2493, 61 L.Ed.2d 101 (1979) (Brennan, J., concurring in part and dissenting in part); O'Connor v. Donaldson, 422 U.S. 563, 580, 95 S.Ct. 2486, 45 L.Ed.2d 396 (1975) (Burger, C.J., concurring). Under this analysis, adults facing involuntary treatment "are entitled to full and fair adversary hearings." Parham, 442 U.S. at 627, 99 S.Ct. 2493 (Brennan, J., concurring in part and dissenting in part); see Maricopa County Cause No. MH 90-00566, 173 Ariz. 177, 182, 840 P.2d 1042, 1047 (App. 1992) ("[B]ecause civil commitment constitutes *215 a significant deprivation of liberty, the State must accord the proposed patient due process protection."). At those hearings, the adult must "be present with counsel, have an opportunity to be heard, [and] be confronted with witnesses against him." Specht v. Patterson, 386 U.S. 605, 610, 87 S.Ct. 1209, 18 L.Ed.2d 326 (1967) (emphasis added). In other settings the Court has stated: "In almost every setting where important decisions turn on questions of fact, due process requires an opportunity to confront and cross-examine adverse witnesses." Goldberg v. Kelly, 397 U.S. 254, 269, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970).
¶ 21 The United States Supreme Court has observed that the right to confrontation under procedural due process is similar to the right to confrontation under the Sixth Amendment. See Greene v. McElroy, 360 U.S. 474, 496-97, 79 S.Ct. 1400, 3 L.Ed.2d 1377 (1959) (stating that procedural due process rights "of confrontation and cross-examination ... find expression in the Sixth Amendment"). But even under the Sixth Amendment, the right to face-to-face confrontation is not absolute. In Maryland v. Craig, 497 U.S. 836, 849-50, 110 S.Ct. 3157, 111 L.Ed.2d 666 (1990), the Court affirmed "the importance of face-to-face confrontation with witnesses appearing at trial" but found that such confrontation was not "an indispensable element of the Sixth Amendment's guarantee of the right to confront one's accusers." Thus, even if appellant's right to confrontation is interpreted according to the relatively strict Sixth Amendment precedents, the lack of face-to-face confrontation does not mandate reversal. The testimony at the hearing in Craig was admissible if the denial of face-to-face confrontation was "[1] necessary to further an important public policy and ... [2] the reliability of the testimony [was] otherwise assured." Id. at 850, 110 S.Ct. 3157. These two factors represent the appropriate constitutional test for evaluating the telephonic testimony permitted here. See State v. Moore, 203 Ariz. 515, 517-18, ¶ 8, 56 P.3d 1099, 1101-02 (App.2002).[4]
¶ 22 As to the first factor at issue, the Arizona legislature has recognized the importance of providing an impaired individual with mental health services. See Arnold v. Ariz. Dept. of Health Servs., 160 Ariz. 593, 609-10, 775 P.2d 521, 537-38 (1989) (observing that the legislature meant to ensure effective mental health services). Providing individuals with needed mental health care on a timely basis is an important public policy. See id. at 610, 775 P.2d at 538 (recognizing that the failure to provide mental health services may have serious consequences).
¶ 23 Thus, based on the Application for Involuntary Evaluation and related proceedings, the State had a strong interest in providing mental health services on the expedited basis set forth in the statutes. The trial court also expressly acknowledged the fact that there was a statutory "truncated time table" for the hearing. In this case, the witness was in Alabama. This clearly suggests that the speed with which the proceedings were required to take place, and the fact that the witness was in Alabama, were considered in determining whether telephonic testimony was necessary.
¶ 24 We consider the question whether telephonic testimony is "necessary to further an important public policy" to present a mixed question of law and fact. Under such circumstances we defer to the trial court's factual findings but review de novo the ultimate legal conclusion. See State v. Gonzalez-Gutierrez, 187 Ariz. 116, 118, 927 P.2d 776, 778 (1996). Though the trial court made no express finding that the witness was physically precluded from traveling from Alabama to Arizona for the hearing, given the witness' presence in Alabama and the need for an expedited hearing in Arizona we find sufficient basis to uphold the trial court's determination that it was necessary to proceed in a telephonic fashion. See Beltran-Tirado v. INS, 213 F.3d 1179, 1186 (9th Cir.2000) ("The government had reason to arrange for telephonic testimony because *216 [the witness] lived in Missouri and the hearing was in San Diego."); but see In re S.B., 263 Neb. 175, 639 N.W.2d 78, 83-84 (2002) (finding that trial court's acceptance of telephonic testimony when witness was not "truly unavailable" violated individual's confrontation rights). We caution that this does not mean that every out-of-state witness when faced with an expedited hearing will be permitted to give telephonic testimony. Trial judges, however, are in the best position to determine the impact of travel on a witness and the entire proceeding in each particular case. We will defer to those factual determinations, see State v. Rosengren, 199 Ariz. 112, 116, ¶ 9, 14 P.3d 303, 307 (App.2000), while reviewing de novo the conclusion that telephonic testimony is "necessary to further an important public policy." Craig, 497 U.S. at 850, 110 S.Ct. 3157.
¶ 25 Second, as to reliability, the witness was identified through the testimony of appellant's daughter. Supra ¶ 8. The court specifically inquired of appellant's daughter if the voice on the telephone could be anyone other than appellant's sister. After identification, appellant's counsel was given an opportunity to cross-examine the witness. The identification and opportunity for cross-examination sufficiently addressed concerns about the reliability of the testimony.
¶ 26 Thus, as to constitutional issues, because the telephonic testimony in this case furthered the important public policy of providing a mental health hearing on an expedited basis with an out-of-state witness, and there were adequate indicia of reliability as to that witness, the lack of face-to-face confrontation did not violate appellant's procedural due process rights. This is particularly so when the trial judge here provided the opportunity for a one-day delay to enable appellant's counsel to interview the witness who was to appear telephonically.

Conclusion
¶ 27 On the record before us, we do not find that the trial court erred in permitting the telephonic testimony of appellant's sister. Accordingly, we affirm.
EHRLICH, P.J. and THOMPSON, J., concurring.
NOTES
[1] We distinguish the setting here from a proceeding to which the Arizona Rules of Procedure for the Juvenile Court would apply. In Maricopa County Juvenile Action No. JV131701, 183 Ariz. 481, 904 P.2d 1305 (App.1995), we rejected telephonic testimony in a juvenile delinquency action. The circumstances here are substantially different. In JV131701, the court was faced with a rule that expressly permitted telephonic testimony in "any [juvenile] dependency or termination of the parent-child relationship hearing," yet made no mention of telephonic testimony in a juvenile delinquency hearing. Id. at 482, 904 P.2d at 1306 (quoting Ariz. R.P. Juv. Ct. 19.2 (repealed 2000)). In the setting before us, there is no applicable court rule that permits telephonic testimony for some types of mental health proceedings but not others. Although constitutional requirements may mandate the presence of all witnesses in a particular mental health proceeding, infra ¶¶ 20-26, the statute at issue here only refers to the physical presence of two specified individuals, the patient and his or her attorney. A.R.S. § 36-539(B).
[2] We are aware of two cases from other jurisdictions that deal with a rule similar to Rule 611(a) and preclude telephonic testimony. Byrd v. Nix, 548 So.2d 1317, 1319 (Miss.1989); Simpson v. Rood, 175 Vt. 546, 830 A.2d, 4, 8, (2003). Neither decision applied the plain language of the rule. In Byrd, the court relied on a comment that it considered to limit the scope of the rule. 548 So.2d at 1319. In Simpson, the court considered the language "orally in open court" to be contrary to telephonic testimony. 830 A.2d at 8. This is a conclusion we do not reach.
[3] The federal rule has been modified to resolve the conflict in the cases. Federal Rule of Civil Procedure 43(a) now provides: "The court may, for good cause shown in compelling circumstances and upon appropriate safeguards, permit presentation testimony in open court by contemporaneous transmission from a different location." In a recent case from the Ninth Circuit, that court observed that telephonic testimony at an immigration hearing did not violate due process and the testimony would have been admissible in a civil proceeding under the current Rule 43(a). Beltran-Tirado v. INS, 213 F.3d 1179, 1185-86 (9th Cir.2000).
[4] Moore applied the test from Craig, but on the record in that case found that the test was not satisfied. 203 Ariz. at 518-19, ¶¶ 12-15, 56 P.3d at 1102-03. We are confronted with a different factual, procedural and public policy setting here.