# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2017-CA-01319-COA

**AMBER NICOLE HEWLETT BROWN**                                    **APPELLANT**

**v.**

**JAMES EDWIN HEWLETT, III**                                    **APPELLEE**

DATE OF JUDGMENT:              08/09/2017
TRIAL JUDGE:                   HON. JOHNNY LEE WILLIAMS
COURT FROM WHICH APPEALED:     PEARL RIVER COUNTY CHANCERY
                               COURT
ATTORNEY FOR APPELLANT:        JERRY WESLEY HISAW
ATTORNEY FOR APPELLEE:         RENEE M. PORTER
NATURE OF THE CASE:            CIVIL - DOMESTIC RELATIONS
DISPOSITION:                   AFFIRMED - 03/12/2019
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**EN BANC.**

**J. WILSON, P.J., FOR THE COURT**:

¶1.     When Amber Brown and James Hewlett divorced, they agreed that Brown, who had

moved to Missouri, would have physical custody of their only child while Hewlett would

have in-person and telephonic visitation. Less than four months later, Hewlett filed a petition

for contempt, alleging that Brown was denying him telephonic visitation. Brown later denied

Hewlett in-person visitation as well. Brown was eventually served with process but failed

to appear in court for the contempt hearing. Brown's attorney appeared and requested a

continuance, but the chancery court denied her request. Following the hearing, the court

found Brown in contempt and ordered her to pay Hewlett $5,000 in attorney's fees.

¶2.     On appeal, Brown alleges that the chancery court erred by (1) denying her requests

for a continuance and discovery; (2) finding her in contempt; and (3) awarding attorney's fees to Hewlett. For the reasons that follow, we find no error and affirm.

## FACTS AND PROCEDURAL HISTORY

¶3. Brown and Hewlett were married in 2004. They have one daughter, Lily, who was born in 2005. In September 2015, Brown left the marital home in Pearl River County and moved to Missouri, taking Lily with her. Later that month, Hewlett filed a complaint in the Pearl River County Chancery Court for separate maintenance and custody of Lily. He later filed an amended complaint in which he sought a divorce and custody of Lily.

¶4. Brown was eventually served with process, and on December 18, 2015, the chancery court set the case for trial and ordered Brown to bring Lily to Mississippi for visitation with Hewlett during the Christmas holiday. However, Brown failed to comply with the court's order and denied Hewlett visitation with Lily. Therefore, on January 19, 2016, Hewlett filed a petition to cite Brown for contempt.

¶5. In November 2015, Brown had initiated a competing custody action in the Circuit Court of Greene County, Missouri. On January 11, 2016, pursuant to the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA),[1] the judge in the Missouri case conferred with the chancellor in the instant case. On January 21, 2016, pursuant to the UCCJEA, the Missouri court entered an order declining jurisdiction and deferring jurisdiction to the chancery court.

¶6. Following a hearing, on March 1, 2016, the chancery court entered an order. The

---

[1] The Mississippi version of the Act is found in Mississippi Code Annotated sections 93-27-101 to -402 (Rev. 2018).

court stated that "[Brown] had agreed and based upon her agreement is ordered to dismiss all actions in the [S]tate of Missouri and to proceed on this matter in Mississippi." The court ordered Brown to bring Lily to Mississippi for visitation with Hewlett during the week of March 5-12, 2016. The court also granted Hewlett an additional two weeks of visitation in June. The trial was continued to June 6, 2016. The court also deferred ruling on Hewlett's request for attorney's fees based on Brown's prior contempt.

¶7. The chancery court also appointed a guardian ad litem (GAL) to "investigate all allegations in the pleadings concerning alleged abuse, custody, visitation, support, and any and all other issues or concerns affecting [Lily's] welfare and best interests." The precise nature of the "alleged abuse" at issue is not clear from the record on appeal.

¶8. On March 31, 2016, Hewlett filed a petition for contempt and additional visitation. Hewlett alleged that Brown had failed to comply with her prior agreement, and the court's prior order, to dismiss all pending actions in Missouri. He alleged that he had incurred significant legal expenses as a result of the still-active case in Missouri.

¶9. On April 7, 2016, Brown filed an answer to Hewlett's complaint for divorce as well as a counterclaim for divorce. Brown asserted that Lily's home state for purposes of the UCCJEA was Missouri rather than Mississippi. Therefore, Brown asserted that the chancery court lacked jurisdiction over matters pertaining to Lily's custody.

¶10. Prior to trial, Brown and Hewlett withdrew their fault-based grounds for divorce and consented to an irreconcilable differences divorce. The parties' consent to the divorce provided that the chancery court would decide issues related to child custody, visitation, and

3

child support, and trial on those issues was continued to October 20, 2016.

¶11.    However, on October 20, 2016, Brown and Hewlett entered into a child custody and property settlement agreement, and the chancery court approved the agreement and incorporated it into the court's final judgment of divorce.  Brown and Hewlett agreed to joint legal custody of Lily, with Brown to have physical custody and Hewlett to have visitation. The agreement provided that Hewlett could exercise visitation up to two weekends per month in Missouri.  In addition, the agreement granted Hewlett visitation in Mississippi during the summer (beginning June 1 and ending July 12), spring break, and holidays.  Finally, the agreement granted Hewlett telephonic visitation at least twice per week.  Hewlett agreed to pay child support of $300 per month.

¶12.    Less than four months later, on February 7, 2017, Hewlett filed a petition for contempt, alleging that Brown had interfered with his telephonic visitation and, as a result, he had not spoken to Lily since Christmas.  A Rule 81 summons was issued for Brown on February 23, 2017, which ordered her to appear for a hearing on May 8, 2017. *See* M.R.C.P. 81(d).  In an affidavit dated April 27, 2017, a process server stated that he had made four unsuccessful attempts to serve Brown at her residence in Missouri.  On the first attempt, a woman, later identified as Brown's mother, answered the door and stated that Brown was not home.  Brown's mother told the process server that she would not cooperate with any efforts to serve Brown.  The process server stated that the next three times he visited Brown's residence, the lights and ceiling fan were on, but no one answered the door.  The process server concluded that Brown was evading service.

¶13.   On May 19, 2017, Hewlett filed a "motion for ex parte emergency relief" pursuant Mississippi Rule of Civil Procedure 65.  Hewlett claimed that Brown had "again initiated spurious custody litigation" in Missouri in an effort to alienate his daughter from him and to deprive the chancery court of jurisdiction.  Hewlett alleged that Brown had registered the chancery court's judgment in Missouri without proper notice to him, and he had been summoned to appear at a hearing in Missouri on May 23, 2017.  Brown had petitioned the Missouri court to modify the custody provisions of the chancery court's judgment, which she had agreed to only six months earlier.  Specifically, Brown had asked the Missouri court to grant her sole legal custody of Lily and to limit Hewlett to supervised visitation in Missouri.  Hewlett's motion for ex parte emergency relief asked the chancery court to award him attorney's fees for having to defend the Missouri litigation and for Brown's contempt.

¶14.   In an order entered on May 22, 2017, the chancery court affirmed its continuing exclusive jurisdiction, pursuant to the UCCJEA, over matters related to Lily's custody.  The court also ordered Brown to appear for a show cause hearing to explain why she was evading service and why she was continuing to pursue litigation in Missouri.  The hearing was set for June 12, 2017.  The order also stated that it should be "registered with the appropriate Court in the State of Missouri for notice upon [Brown]."  Hewlett's attorney in Missouri promptly filed the May 22 order in the Missouri court.  The record is unclear regarding any subsequent action taken by the Missouri court.

¶15.   Brown did not appear at the show cause hearing on June 12, 2017.  Hewlett appeared and testified that he had exercised in-person visitation during spring break in March 2017.

However, he had talked to Lily only once by phone during all of 2017, even though he had attempted to contact her on an almost daily basis. In addition, Hewlett was being denied his summer visitation with Lily—which was supposed to have started on June 1—because Brown had refused to communicate with him since March. Hewlett's parents testified and corroborated Hewlett's testimony.

¶16.    On June 14, 2017, the chancery court entered an order finding that Brown had failed to appear at the hearing despite receiving proper notice—i.e., the May 22 order filed in the Missouri court. The chancery court also found that Brown was continuing to deny Hewlett visitation. Therefore, the court also issued a "writ of assistance" directing the sheriff of Pearl River County to take custody of Lily and deliver her to Hewlett for summer visitation. The court ordered the sheriff to communicate with the sheriff of Greene County, Missouri, to assist in the execution of the writ of assistance. The court also set a hearing for August 7, 2017, to address pending matters, including attorney's fees and sanctions.

¶17.    On July 12, 2017, Hewlett filed another motion for ex parte relief. He alleged that Brown had continued to deny him visitation and that the sheriff of Greene County, Missouri, would not comply with the chancery court's writ of assistance. Hewlett's motion was set for a hearing on August 7, 2017, and the clerk issued a new Rule 81 summons for Brown. The summons directed Brown to appear at the hearing to defend against the complaint for contempt, emergency show cause motion, ex parte motions for emergency relief, and show cause orders. Brown was finally served with the summons on August 1, 2017.

¶18.    In late July or early August 2017, the chancellor conferred with the judge in the

Missouri case filed by Brown. As a result of their conference, the Missouri court again declined to exercise jurisdiction. Brown filed a motion for reconsideration in the Missouri court. She apparently argued that the court had erred by declining to exercise jurisdiction without notice to her or a hearing. The record does not contain Brown's motion or any written order from the Missouri court. However, there does not appear to be any dispute that the Missouri court declined to exercise jurisdiction.

¶19. Brown did not personally appear in the chancery court on August 7. However, an attorney appeared on her behalf and requested a continuance. The hearing was continued to 11:30 a.m. the following day. The continuance order specifically ordered Brown to appear at the hearing, and Brown's attorney promptly notified Brown of the court's order.

¶20. Brown again failed to appear on August 8. Brown's attorney advised the court that Brown had recently started a new job and could not take off of work but was available to participate by telephone. Brown's attorney then argued that the chancery court lacked jurisdiction. Brown's attorney also requested a continuance until the Missouri court had ruled on Brown's motion for reconsideration. However, the chancery court found that Brown was served with notice of the August 8 hearing. The chancery court also ruled, once again, that it retained jurisdiction over matters related to Lily's custody.

¶21. The chancery court then took up the merits of Hewlett's contempt petition. Brown's attorney then requested a continuance so that she could depose Lily's counselor in Missouri and so that Brown and Lily could testify. In the alternative, she asked that Brown and Lily be allowed to testify telephonically. The chancellor denied Brown's requests.

¶22. Hewlett testified that he had been unable to exercise his extended summer visitation with Lily because Brown would not communicate with him. He also testified that he had continued to call or text Lily nearly every day since the June 12 hearing, but he had not been able to talk to her even once. Hewlett's mother corroborated his testimony.

¶23. The next day, August 9, 2017, the chancery court entered a judgment of contempt. The court found that Brown was in contempt because she had interfered with Hewlett's visitation rights. The court also found that Brown had attempted to frustrate the court's judgment and orders by initiating litigation in Missouri. The chancellor stated that he had twice conferred with judges in Missouri to confirm his continuing jurisdiction over issues related to custody of Lily, and the Missouri judges had concurred that the chancery court retained jurisdiction in the matter. The court found that any further continuance "would be a miscarriage of justice." The court also issued writs of habeas corpus directing law enforcement to bring Brown and Lily before the court for a hearing on August 23, 2017. The court ruled that Hewlett should immediately receive three weeks of uninterrupted visitation with Lily. The court also ordered Brown to post a $10,000 cash surety bond to ensure her compliance with the court's orders. Finally, the court ordered Brown to pay Hewlett $5,000 for attorney's fees incurred due to her contempt.

¶24. On August 16, 2017, Brown filed a motion to reconsider or amend the judgment of contempt and the writs of habeas corpus. She argued that the August 8 hearing should have been continued. She also argued that the hearing should have been stayed and that the court lacked jurisdiction because of the pending case in Missouri. Finally, in the alternative, she

8

argued that the hearing should have been stayed—or, at minimum, she and Lily should have been allowed to testify telephonically—so that she could defend herself against Hewlett's petition for contempt. She alleged that, with more time, she could have put on evidence related to Lily's counseling in order to explain why she had denied Hewlett visitation. Brown noticed her motion for a hearing on August 23.

¶25. Brown personally appeared at the hearing in chancery court on August 23. After hearing arguments from counsel, the court denied Brown's motion to reconsider or amend the judgment of contempt. The court then questioned Brown regarding her failure to appear at the hearing on August 8. Brown acknowledged that she was served with process on August 1, but she denied that she knew about the hearing prior to service. She testified that she did not believe that the hearing would be held on August 7 because she had not received seven days' prior notice. *See* M.R.C.P. 81(d)(2). She admitted that her attorney informed her by 3 p.m. on August 7 that the hearing would go forward at 11:30 a.m. on August 8. However, she testified that she could not attend the hearing because she had recently started a new job and would have been required to drive to the hearing from Missouri.

¶26. The chancery court found that Brown was in contempt for her failure to appear at the hearing on August 8. The court ordered her incarcerated until she had satisfied the requirements of the court's August 9 order. Brown subsequently posted a $10,000 cashier's check as a bond, paid $5,000 in attorney's fees, and delivered Lily to Hewlett for three weeks of visitation. The chancery court then entered an order directing that Brown be immediately released from incarceration.

9

¶27. Brown filed a timely notice of appeal from the judgment finding her in contempt and the subsequent denial of her motion to reconsider. On appeal, Brown argues that the chancery court erred by (1) denying her requests for a continuance and discovery; (2) finding her in contempt; and (3) awarding attorney's fees to Hewlett.

**ANALYSIS**

**I.     Denial of Requests for Continuance and Discovery**

¶28. Brown actually raises four distinct sub-issues under the first heading of the argument section of her opening brief. We address these sub-issues in turn below. Some of them are procedurally barred. All are without merit.

¶29. First, Brown asserts that the chancery court should have granted a continuance and appointed a GAL to investigate "allegations of abuse and/or neglect." However, Brown never asked the court to appoint a GAL. Therefore, any claim that the court should have exercised its discretion to appoint a GAL is procedurally barred. *See, e.g.*, *McDonald v. McDonald*, 39 So. 3d 868, 885 (¶54) (Miss. 2010) ("The well-recognized rule is that a trial court will not be put in error on appeal for a matter not presented to it for decision.").

¶30. Nor was the appointment of a GAL mandatory in this case. If there is a legitimate charge of abuse or neglect in a custody proceeding, then the chancery court *must* appoint a GAL, "whether the parties requested a [GAL] or not." *Carter v. Carter*, 204 So. 3d 747, 758-59 (¶50) (Miss. 2016) (citing Miss. Code Ann. §93-5-23 (Rev. 2018)); *see also* Miss. Code Ann. § 93-11-65 (Rev. 2018)). However, the appointment of a GAL is mandatory only if there is a "sufficient factual basis to support" an allegation of abuse or neglect. *Carter*,

10

204 So. 3d at 759 (¶51).  The chancery court has "discretion" to determine whether such an allegation is "legitimate."  *Id.* at (¶53).  If the court concludes that there is no factual basis for the allegation, then the appointment of a GAL is not mandatory.  *Id.*  In this case, Brown fails to cite to any concrete allegation of abuse, let alone any evidence to support such a claim.  Even at the final hearing before the chancery court, Brown merely testified that Lily had seen a counselor for unspecified reasons.  On this record, the chancery court did not abuse its discretion by not appointing a GAL sua sponte in this contempt proceeding.[2]

¶31.   Brown's second sub-argument is that the chancery court should have continued the case to allow her to conduct discovery.  A trial court's rulings on discovery matters will not be reversed unless the court has abused its discretion.  *Dawkins v. Redd Pest Control Co.*, 607 So. 2d 1232, 1235 (Miss. 1992).  Likewise, "the decision to grant or deny a motion for a continuance is within the sound discretion of the trial court and will not be reversed unless the decision results in manifest injustice."  *In re E.G.*, 191 So. 3d 763, 775 (¶37) (Miss. Ct. App. 2016) (quoting *Ross v. State*, 954 So. 2d 968, 1007 (¶91) (Miss. 2007)).

¶32.   Here, Brown failed to make any specific request to conduct discovery in the trial court, and on appeal she only vaguely alleges that she needed "discovery . . . to learn the nature of the allegations and mount a defense."  However, this contempt proceeding was focused on *Brown's* reasons for her failure to comply with the custody provisions of the divorce judgment and the court's orders.  It was incumbent on Brown to explain why she had not complied or could not comply with the visitation provision of the divorce decree.  *See*

---

[2] As noted above, the chancery court did appoint a GAL prior to the original custody determination in the judgment of divorce.  *See supra* ¶7.

11

*infra* ¶37 (discussing defenses to contempt). Brown wholly fails to explain why she needed to conduct discovery to explain her own actions or inactions. Moreover, pursuant to Rule 81, a petition for contempt is "triable 7 days after completion of service of process." M.R.C.P. 81(d)(2).[3] Thus, Brown was obliged to appear in court for the hearing and explain her actions and her failure to comply with the chancery court's judgment.

¶33. The only specific discovery-related issue that Brown did raise in the trial court was her attorney's ore tenus request, on the day of the contempt hearing, for a continuance to depose Lily's counselor in Missouri. However, Brown failed to support her request with an affidavit from the counselor or any other evidence. We find no abuse of discretion in the trial court's denial of this request. *Culpepper Enters. Inc. v. Parker*, No. 2016-CA-01771-COA, 2018 WL 3738178, at *9 (¶¶42-45) (Miss. Ct. App. Aug. 7, 2018) (holding that the trial court did not err by denying a request for a continuance that lacked evidentiary support).

¶34. Brown's third sub-argument under this heading is that the chancery court should have continued the case so that Brown could appear and testify—or at least should have allowed Brown and Lily to testify by telephone. We find no abuse of discretion in the denial of these requests. "[T]he admissibility of telephonic testimony is within the sound discretion of the

---

[3] We note that Brown does not challenge the sufficiency of service of process under Rule 81. There is no dispute that she was personally served with the Rule 81 summons on August 1, 2017, and the hearing was held seven days later. *See* M.R.C.P. 81(d)(2) (providing that contempt actions are "triable 7 days after completion of service of process"). In the trial court, Brown's attorney appeared to concede that service was sufficient, and on appeal she does not argue otherwise. Because Brown does not challenge the sufficiency of service, it is unnecessary for us to address the chancery court's conclusion that Brown was properly served when the chancery court's show cause order was filed in the pending Missouri case filed by Brown. *See supra* ¶¶ 14, 16.

trial judge and is not reversible unless such discretion is abused." *Byrd v. Nix*, 548 So. 2d 1317, 1320 (Miss. 1989). "[T]elephonic testimony generally [is] not . . . allowed" "[i]n the absence of exigency or consent" of the opposing party.[4] *Id.* at 1319-20. Brown had the opportunity to appear at the hearing and testify in person but failed to do so. We hold that the trial court did not abuse its discretion by declining to allow telephonic testimony under these circumstances. *See Estate of Hunter v. Hunter*, 736 So. 2d 440, 444 (¶13) (Miss. Ct. App. 1999) (finding that the chancellor did not abuse his discretion by declining to allow telephonic testimony "[s]ince there were other reasonable means available . . . to secure the testimony of [the absent witness]").

¶35.　Brown's final sub-argument is that the chancellor was biased and that she is entitled to a hearing before a different chancellor on remand. The chancellor has retired, and we are not remanding the case for any purpose, so this issue is probably moot. But we address it briefly anyway. We note that Brown never filed a recusal motion in the trial court, so any recusal issue is procedurally barred. *See Wal-Mart Stores Inc. v. Frierson*, 818 So. 2d 1135, 1141 (¶10) (Miss. 2002). Moreover, Brown primarily argues that the chancellor showed bias by denying her requests for a continuance and by not allowing telephonic testimony. We have already held that the chancellor did not abuse his discretion in any of his rulings. His rulings do not demonstrate bias either. Finally, Brown contends that the chancellor demonstrated bias when he made comments to the effect that he did not see a defense to Brown's contumacious violations of the court's judgment. However, the comments that

---

[4] Hewlett specifically objected to Brown's request to present telephonic testimony.

Brown cites are not evidence of bias but only the judge's candid observations after substantial evidence of contempt had already been presented. In short, we conclude that Brown's allegation of bias is without merit or any support in the record.

## II.      Finding of Contempt

¶36.    Brown next claims that the chancery court erred by finding her in contempt for failing to comply with the visitation provisions of the court's prior judgment. Brown asserts that she was following the advice of Missouri counsel, who allegedly told her that the case should be heard in Missouri. This argument is without merit.[5]

¶37.    "The Mississippi Supreme Court has consistently held that the inquiry in a contempt proceeding is limited to whether or not the order was violated, whether or not it was possible to carry out the order of the court, and if it was possible, whether or not such violation was an intentional and willful refusal to abide by the order of the court." *Ellis v. Ellis*, 840 So. 2d 806, 811 (¶18) (Miss. Ct. App. 2003) (quotation marks omitted). "The only defenses to a contempt violation include an inability to comply with the court order or that the court order was unclear." *Id.* (citations omitted). It is not a "defense . . . that the contemnor does not agree with the previous order and considers the order of the court decree to be wrong, even [if her] motives in so doing are based upon pure moral sentiment." *Id.* at (¶19) (quotation marks omitted). A party must file a motion and obtain a modification of the

_____

[5] Brown also asserts that if a continuance had been granted, or if witnesses had been allowed to testify by telephone, then she could have proven that she denied Hewlett visitation out of concern for Lily's well-being. We have already affirmed the chancellor's denial of a continuance and evidentiary rulings for the reasons discussed above. For those same reasons, these issues are not a basis for reversing the chancellor's finding of contempt.

judgment establishing visitation rather than simply ignore its provisions. "Whether a party is in contempt is a question of fact to be decided on a case-by-case basis." *Gilliland v. Gilliland*, 984 So. 2d 364, 369-70 (¶19) (Miss. Ct. App. 2008). "A chancellor has substantial discretion in deciding contempt matters because of the chancellor's temporal and visual proximity to the litigants." *Id.* (quotation marks omitted).

¶38. We affirm the chancery court's finding of contempt because there is substantial evidence to support it, and the court did not clearly err or abuse its discretion. Brown's reliance on the Missouri litigation is misplaced, as nothing that occurred in Missouri justified her violations of the visitation provisions of the divorce judgment of the chancery court. As discussed above, the Missouri court declined to exercise jurisdiction in the case.[6] More important, the Missouri court never entered an order that purported to modify or suspend Hewlett's visitation rights under the chancery court's judgment. Brown's mere filing of litigation in Missouri cannot justify her refusal to comply with the provisions of the chancery court's judgment, which remained in effect at all times. There is no dispute that Brown failed to comply with the visitation provisions of that judgment. Accordingly, we affirm the chancellor's finding of contempt.

### III.   Award of Attorney's Fees

¶39. Brown's final argument is that the chancellor erred by awarding Hewlett attorney's fees without requiring an "itemized statement" from his attorney or "accompanying

---

[6] On appeal, Brown does *not* argue that the chancery court ever lost jurisdiction pursuant to the UCCJEA or for any other reason. *See* Miss. Code Ann. § 93-27-202 (Rev. 2018) (providing that a chancery court has "exclusive, continuing jurisdiction" over a prior child custody determination except in specified circumstances).

testimony related to the *McKee* factors."[7]  We find no abuse of discretion and therefore affirm the award.

¶40.    "The matter of awarding attorney's fees is largely entrusted to the sound discretion of the chancellor."  *Heisinger v. Riley*, 243 So. 3d 248, 259 (¶45) (Miss. Ct. App. 2018) (quoting *Evans v. Evans*, 75 So. 3d 1083, 1089 (¶22) (Miss. Ct. App. 2011)).  We review the reasonableness of the award only for an abuse of discretion, and we will not reverse unless the award is manifestly erroneous or amounts to a clear or unmistakable abuse of discretion. *Berlin v. Livingston Prop. Owners Assoc. Inc.*, 232 So. 3d 148, 159 (¶33) (Miss. Ct. App. 2017), *cert. denied*, 229 So. 3d 714 (Miss. 2017).  "When a party is held in contempt for violating a valid judgment of the court, attorney's fees should be awarded to the party that has been forced to seek the court's enforcement of its own judgment."  *Heisinger*, 243 So. 3d at 259 (¶45) (quoting *Gregory v. Gregory*, 881 So. 2d 840, 846 (¶28) (Miss. Ct. App. 2003)).  The award is intended to reimburse the prevailing party for expenses incurred as a result of the other party's contumacious conduct.  *See id.*

¶41.    In this case, the chancellor granted Hewlett's request for $5,000 in attorney's fees based on Brown's contempt.  The chancellor found that $5,000 was "more than reasonable and probably not enough."  Brown argues that the chancellor should not have accepted the request at face value.  She argues that the chancellor should have insisted on an itemized billing statement and additional testimony.

¶42.    However, in appropriate cases "in which a court is authorized to award reasonable

---

[7] *See McKee v. McKee*, 418 So. 2d 764 (Miss. 1982).

attorneys' fees, the court [may] make the award based on the information already before it and the court's own opinion based on experience and observation." Miss. Code Ann. § 9-1-41 (Rev. 2014). In such cases, the court may determine that there is no need for the requesting party to put on additional "proof as to the reasonableness of the amount sought." *Id.* And when the record as a whole shows that the amount awarded was "not unreasonable," we will affirm. *Berlin*, 232 So. 3d at 159 (¶34) (quoting *West v. West*, 88 So. 3d 735, 747 (¶58) (Miss. 2012)).

¶43. Given the lengthy procedural history of this case, as recounted above, and Brown's persistent contempt of court, we find no abuse of discretion in the chancellor's ruling. An award of $5,000 is not an unreasonable amount for prosecution of this contempt action, which required three hearings in chancery court and also forced Hewlett to retain counsel in Missouri. Based on the record as a whole, the award was not unreasonable and is therefore affirmed. *See* Miss. Code Ann. § 9-1-41; *Berlin*, 232 So. 3d at 159 (¶34).

## IV. Appellate Attorney's Fees

¶44. In his appellate brief, Hewlett requests an additional award of $2,500 in attorney's fees for his defense of this appeal. Hewlett's request appears to be well-taken because we have affirmed the chancellor's finding that Brown was in contempt. *See Heisinger*, 243 So. 3d at 260 (¶48). In such cases, we generally award appellate attorney's fees equal to one half of the attorney's fees awarded by the chancery court. *See Riley v. Riley*, 196 So. 3d 1159, 1164 (¶23) (Miss. Ct. App. 2016) ("Generally, on appeal this Court awards attorney's fees of one-half of what was awarded in the trial court."); *accord Grant v. Grant*, 765 So. 2d

17

1263, 1268 (¶19) (Miss. 2000).

¶45.   Hewlett's request is clearly set out in a separate section of his appellate brief with a citation to on-point authority.  However, our Supreme Court recently held that a request for appellate attorney's fees must be made in a motion that complies with Mississippi Rule of Appellate Procedure 27(a). *Latham v. Latham*, No. 2017-CA-00856-SCT, 2019 WL 242958, at *4-*5 (¶¶21-24) (Miss. Jan. 17, 2019).  Therefore, we deny Hewlett's request for appellate attorney's fees without prejudice.  Hewlett may renew his request in a motion that complies with Rule 27(a).  Any such motion should be filed before the mandate issues.

## CONCLUSION

¶46.   The chancellor did not abuse his discretion by denying Brown's requests for a continuance and to present telephonic testimony.  Nor did the chancellor clearly err or abuse his discretion by finding Brown in contempt.  Rather, the chancellor's finding of contempt is supported by substantial evidence that Brown refused to comply with the clear visitation provisions of the parties' divorce decree.  Finally, the chancellor did not err by awarding Hewlett reasonable attorney's fees based on Brown's contumacious conduct.

¶47.   **AFFIRMED.**

**BARNES, C.J., CARLTON, P.J., GREENLEE, WESTBROOKS, TINDELL, LAWRENCE AND C. WILSON, JJ., CONCUR.  McDONALD, J., SPECIALLY CONCURS WITH SEPARATE WRITTEN OPINION, JOINED BY WESTBROOKS AND McCARTY, JJ.; TINDELL, J., JOINS IN PART.  McCARTY, J., SPECIALLY CONCURS WITH SEPARATE WRITTEN OPINION, JOINED IN PART BY WESTBROOKS, J.; McDONALD, J., JOINS IN PART WITH OPINION.**

**McDONALD, J., SPECIALLY CONCURRING:**

¶48.   I recognize that the common law rule for granting attorney's fees to the prevailing

party on appeal is well established. *Yates v. Summers*, 177 Miss. 252, 170 So. 2d 827, 832 (1936); *Riley v. Riley*, 196 So. 3d 1159, 1164 (¶23) (Miss. Ct. App. 2016). But, I agree with Judge McCarty's other specially concurring opinion that the amount of fees should be based on the time and energy expended on the appeal as opposed to an arbitrary "one-half" rule.

¶49. An analysis as outlined in *McKee v. McKee*, 418 So. 2d 764 (Miss. 1982), should be employed to determine the amount of attorney's fees to be awarded to the prevailing party on appeal.

¶50. The Supreme Court recently ruled in *Latham v. Latham*, No. 2017-CA-00856-SCT, 2019 WL 242958 at *4-*5 (¶21-24) (Miss. Jan. 17, 2019), that submission of a motion and time records is the better practice and has now required such pursuant to Mississippi Rules of Appellate Procedure 27(a).

¶51. In the case under consideration, I believe that the majority made the correct decision by dismissing the request for attorney's fees without prejudice and allowing the prevailing party to make a request in compliance with Mississippi Rule of Appellate Procedure 27(a). I therefore specially concur with the majority for the foregoing reasons.

**WESTBROOKS AND McCARTY, JJ., JOIN THIS OPINION. TINDELL, J., JOINS THIS OPINION IN PART.**

**McCARTY, J., SPECIALLY CONCURRING:**

¶52. I agree with the conclusions of the majority in all respects but write separately to emphasize that attorneys are bound by Rule 1.5 of the Mississippi Rules of Professional Conduct to only take a "reasonable fee." The common law practice of seeking one-half of the attorney's fees awarded by the chancery court is not tethered to our rules or the actual

19

work performed by the attorney. In light of the Supreme Court's ruling in *Latham v. Latham*, No. 2017-CA-00856-SCT, 2019 WL 242958 (Miss. Jan. 17, 2019), the practice should be fully eliminated.

¶53. In Mississippi, "[a] lawyer's fee shall be reasonable." M.R.P.C. 1.5(a). As a matter of law, "the word 'shall' is a mandatory directive." *Ivy v. Harrington*, 644 So. 2d 1218, 1221 (Miss. 1994). Rule 1.5 gives us a list of eight factors that guides whether the fee is reasonable—such as "the time and labor required," or "the fee customarily charged in the locality for similar legal services," and the experience and reputation of the attorney. M.R.P.C. 1.5(a)(1)-(8). These are "also known as the *McKee* factors . . . ." *Tunica County v. Town of Tunica*, 227 So. 3d 1007, 1031 (¶58) (Miss. 2017).

¶54. Therefore if one is seeking attorney's fees, one must be able to show that it is a reasonable fee. Although in certain cases, such as this one, a flat fee or a request for a certain amount could be approved, in the vast majority of cases the attorney will need to demonstrate reasonableness. I believe this request cannot be done with a blanket ask for "one-half of the attorney's fees awarded by the trial court." The reasoning is common sense. The work in the trial court may have been formidably complex, as in this case, and required multiple attorneys over multiple years. In contrast, it might be only one attorney who handles an appeal, which might span the better part of a single year. The work of an appeal may not warrant one-half the trial-court fee, rendering it an unreasonable fee.

¶55. Conversely, in some appeals the written and oral advocacy required may be much greater than the work in a trial court. A one-day trial on a single issue may not require a large

20

fee, but a change in the law or statute might warrant extensive briefing and research for an appeal. One-half the trial court fee would not be reasonable in such a situation, as more would be warranted.

¶56. Even at the dawn of the twentieth century it was simply "a matter of common knowledge amongst the profession that a less fee should be allowed for services in the Supreme Court than in the circuit or chancery court." *Curphy & Mundy v. Terrell*, 89 Miss. 624, 42 So. 235, 236 (1906). In that case, the Supreme Court ruled that "[t]he whole profession may be said to have knowledge" that "[t]he old tariff in use in this state customarily made the fee in this court one-half the fee in the court below." *Id*. By 1936, the Supreme Court was holding that "[i]t has long been our custom under such circumstances and in such cases to allow one-half of the fee allowed in the lower court when the fee fixed below is reasonable and proper." *Yates v. Summers*, 177 Miss. 252, 170 So. 827, 832 (1936).

¶57. As a result, the one-half fee comes to us through years of precedent and was once so common that it was granted without citation. *See, e.g.*, *Jenkins v. Jenkins*, 278 So. 2d 446, 450 (Miss. 1973) (no citation of law while granting the one-half fee). It was simply that "[t]he rule of this Court is to allow one-half of the amount awarded by the trial court." *Keyes v. Keyes*, 252 Miss. 138, 145, 171 So. 2d 489, 491 (1965);[8] *Kyzar v. Kyzar*, 248 Miss. 59, 64, 157 So. 2d 770, 772 (1963) (granting $125 for appellate fees, half of the $250 for trial court work). The one-half fee does not appear to ever have been actually one of the Supreme

---

[8] In *Keyes*, the Court had even ordered the one-half fee when the appellant did not prevail in the appeal, but was demonstrably without funds and "[i]mportant questions were decided, and very sacred rights were in balance." *Id*. at 491; *accord Nix v. Nix*, 253 Miss. 565, 571, 176 So. 2d 297, 300 (1965) (granting a one-half fee to losing party upon remand).

Court Rules that were in effect at the time before the adoption of the Rules of Appellate Procedure, and was elsewhere referred to as "the Court's policy . . . to award attorneys' fees on appeal of one-half of that allowed by the trial court. . . ." *Tighe v. Tighe*, 239 Miss. 666, 670, 124 So. 2d 843, 843 (1960). It may have had its origins in part or in whole in statutes which allowed chancellors to "divide[] as may appear equitable" the costs of suit. Miss. Code Ann. 1942, § 1583 (recompiled 1956); *Powell v. Booth (In re Powell's Will)*, 239 Miss. 10, 17, 121 So. 2d 1, 3 (1960) (citing to the statute for a one-half fee).

¶58. Regardless of its origin, and despite its lengthy history, the one-half fee award should be fully retired. Ultimately, the needs and requirements of advocacy between the trial court and appeal can be very different, and a generic request for one-half the trial court fee does not properly honor Rule 1.5 or its requirement of reasonableness. Therefore any attorney seeking fees from this Court or any other is best served by adhering closely to the *McKee* factors and demonstrating that the fee they seek is reasonable.

**WESTBROOKS, J., JOINS THIS OPINION IN PART. McDONALD, J., JOINS IN PART WITH OPINION.**