540 P.2d 149

**STATE of Arizona, Appellee,**

v.

**James Francis GUILIANI, Appellant.**

**No. I CA–CR 937.**

Court of Appeals of Arizona,
Division 1,
Department B.

Sept. 23, 1975.

---

Bruce E. Babbitt, Atty. Gen., by Grove M. Callison, Asst. Atty. Gen., Phoenix, for appellee.

Mehrens & Pearce, P. A., by Craig B. Mehrens, Phoenix, for appellant.

## OPINION

HAIRE, Chief Judge, Division 1.

On this appeal we are required to determine whether the trial court erred in denying the defendant's motion for a directed verdict. The motion for directed verdict was based upon defendant's claim that the evidence was insufficient to support a submission to the jury. When reviewing a trial court's refusal to direct a verdict for the defendant, we must sustain the decision "[s]o long as there is substantial admissible evidence for submission to the jury which could support a guilty verdict . . . ." *State v. Money*, 110 Ariz. 18, 25, 514 P.2d 1014, 1021 (1973).

The facts show that on December 10, 1973, a man and a woman attempted to transport marijuana to Charlotte, North Carolina, by an REA Air Express shipment, in violation of A.R.S. § 36–1002.07. While the REA employee, Sally Deemer, obtained a good impression of the woman's features, her observation of the man was hampered because he was not as close as was the woman, and Miss Deemer was not wearing her glasses.

This woman was later identified as a certain Lenora Moninger, and pursuant to the issuance of a search warrant, police officers confiscated various articles in her home.[1] A letter written by the defendant to Lenora Moninger was seized in the search. The prosecution's entire case against the defendant rested upon this letter and the identification testimony of Miss Deemer.

After reviewing the evidence, we hold that the trial judge erred in denying defendant's motion for a directed verdict.

At the trial the letter written to Lenora Moninger was admitted into evidence over defendant's objection. Expert testimony indicated that the letter had been written by the defendant. The allegedly damaging portion of the letter reads:

"P.S. If you see any of the people who might be interested in pounds, tell them the quality will be as good as this and probably better, but at least this good, and better most of the time.

"P.P.S. I put two extras in the box for you because I love you. That's why. I love you."

If we assume that the reference in the letter to "pounds" means pounds of marijuana, a reading of the entire letter reveals its immateriality to the crime here charged. The attempted shipment by Miss Moninger occurred on December 10, 1973. The letter was seized from her apartment on December 18, 1973. Although the letter is undated, it is apparent from its contents that it has no connection with the crime with which defendant has been charged. The most that can be inferred is that at some other time, and at some other place, the defendant shipped marijuana *to* Lenora Moninger. Since the prosecution contended that Lenora Moninger was accompanied by the defendant when the charged attempt to ship marijuana occurred, this letter obviously concerns a shipment other than that involved in this prosecution, and fails to provide any evidence tending to connect defendant with the shipment here involved.

The only other evidence which could possibly be considered as connecting defendant with the attempted shipment was the testimony of the prosecution's identification witness, Sally Deemer, the express office employee who accepted the marijuana for shipment from Lenora Moninger. Miss Deemer was unable to identify defendant as being the person who accompanied Miss Moninger to the REA express office. Her entire testimony concerning

---

1. Lenora Moninger was not tried with the defendant, and did not present any testimony in the trial court proceedings.

**532**

the identity of the person accompanying Miss Moninger is as follows:

"Q Did you give one of these Exhibit 1's [receipt], so-called Exhibit 1's, to the girl or to the boy?

"A I believe to the girl. I'm certain to the girl. I said, 'I'm certain.' I don't really remember *except that I didn't see the boy at all, hardly.*

"Q Well, you wrote down a description of the boy, that you have here on the back.

"A Yes.

* * * * * *

"Q I see you have glasses.

"A Yes.

"Q Were you wearing them at the time?

"A No, I was not.

"Q You need them to see for distances; is that correct?

"A I need them to see as far as you, yes, at a distance of about 6 feet.

"Q I believe, it is my understanding, that you could make out a form, but not specific things on it; is that right?

"A That's right.

"Q I understand, I think that is, as far as identifying the male, *that you believe you would have great difficulty in recognizing him; is that correct?*

"A *Yes.*

* * * * * *

"Q [By Mr. Cantor:] How long was the man whose description you wrote on the back of the piece of paper inside the building?

"A A maximum of 10 minutes at the way outside.

"Q Somewhere between 5 to 10 minutes would be fair to say?

"A I'd say yes.

"Q Was it well lit inside?

"A No. No, our office isn't well lit.

"Q Was it dark?

"A No, it wasn't dark, but it was light, but it's not well lit.

"Q At any rate, was it lit well enough so that you could see people's faces?

"A Yes.

"Q And write out the slips of paper?

"A Yes.

"Q A few moments ago, the defendant stood up and walked by you and towards you and away from you in the courtroom. You have also read the description on the back here of this document.

"A Yes.

"Q Is there anything different in either the size or the color, style of the hair, that you see here in this courtroom than you saw at the place?

"MR. MEHRENS: I'm sorry. I don't understand the question. Maybe the witness doesn't. Size of what?

"THE COURT: Rephrase it, Counsel.

"Q [By Mr. Cantor]: Is there any difference in the size of the individual that walked in front of you now and the size of the individual that was in the place of business at the time Exhibit 1, where you wrote down the description?

"A Stop me if I'm wrong in saying this: He looked, he appears from what I recall—He appears different to me because he's not dressed the same for one thing—Well, maybe that's not why.

"Q Other than the clothes.

"A I couldn't say. He looks thinner.

"Q Looks thinner?

"A Yes.

"Q Does he look the same height?

"A What's written there—

"Q 5 foot, 6.

"A Yes, I remember the 5 foot, 6. *I saw him from the back mainly.*

*And I was guessing. And I would still say this fellow looks about 5 foot, 6, and he does have long, dark, curly hair. It looks the same.*

"Q What you are saying is that the fellow that you wrote the description on had dark, curly hair, and the man here has the same type hair?

"A Right.

"Q He appears to be the same height?

"A Yes." (Emphasis added).

The following cases reveal that to be sufficient to support submission to the jury, identification testimony, standing alone, must meet a certain standard. Absent this standard the testimony may be sufficient if accompanied by other evidence which tends to establish the actor's identity and connect him with the crime charged. The defendant in *State v. Dutton*, 83 Ariz. 193, 318 P.2d 667 (1957), challenged the court's submission of the question of his guilt to the jury, claiming that the evidence did not sufficiently identify him as the perpetrator of the crime. The witness, basing the identification upon stature and facial similarities, could not positively swear that the defendant was the same person he saw commit the crime. The Supreme Court, in affirming the conviction, determined that an identification need not be free from inconsistencies, nor be stated positively:

"Testimony of witnesses that they believe defendant is the person they saw commit the crime is sufficient to sustain conviction." 83 Ariz. at 199, 318 P.2d at 670 (Court quoting from Nichols, Applied Evidence).

Here, the testimony of Miss Deemer did not rise to that level. She did not testify that she believed that defendant was the person she saw with Miss Moninger.

In *State v. Mendibles*, 5 Ariz.App. 463, 428 P.2d 127 (1967), a witness testified to the height, age, and complexion of the perpetrator of the crime. However, she was uncertain as to whether the defendant was the person she had seen earlier. In an ex-tra-judicial identification occurring soon after the incident, the witness chose the defendant's photograph from a group of photographs as that most resembling the face she had seen. The court, in upholding the admissibility of the identification, stated that:

"Although this identification was less than positive, we cannot say, as a matter of law, that it could not properly be presented to the jury." 5 Ariz.App. at 465, 428 P.2d at 129.

Finally, in *State v. Peterson*, 107 Ariz. 268, 485 P.2d 1158 (1971), the witness refused to positively identify the defendant, saying merely that he was the correct height, weight and age and looked somewhat like the person who committed the crime. The court admitted that this identification evidence was weak, but declared it sufficient to go to the jury when combined with significant fingerprint evidence which also tended to establish the defendant's identity.

Here, the most that can be said concerning Miss Deemer's identification testimony is that the defendant's height and hair was similar to that of the person she observed accompanying Miss Moninger. There is no other evidence to connect defendant with the crime charged. If there had been other evidence tending to establish that defendant was the person accompanying Miss Moninger at the time of the attempted shipment, then the letter previously referred to in this decision might have been relevant as circumstantial evidence tending to establish defendant's knowledge of the contents of the shipment. However, as we have previously stated, Miss Deemer's identification evidence was not sufficient in and of itself to establish defendant's presence at the time of the attempted shipment. Under these circumstances, the prosecution failed to present sufficient evidence for submission of the question of defendant's guilt to the jury, and the defendant's motion for directed verdict should have been granted.

In view of our determination that the evidence was insufficient to support de-

fendant's conviction, we need not consider the substantial and serious questions raised by appellant concerning the failure of the prosecution to comply with the discovery provisions of Rule. 15.1, Rules of Criminal Procedure, 17 A.R.S. The judgment and sentence are reversed.

JACOBSON, P. J., and EUBANK, J., concur.