218 P.3d 1024

**In re MH 2008–001752.**

**No. 1 CA–MH 08–0048.**

Court of Appeals of Arizona, Division 1, Department C.

Oct. 5, 2009.

James J. Haas, Maricopa County Public Defender By Edith M. Lucero, Deputy Public Defender, Phoenix, Attorneys for Appellant.

Andrew P. Thomas, Maricopa County Attorney By Anne C. Longo, Deputy County Attorney, Davina Bressler, Deputy County Attorney, Phoenix, Attorneys for Appellee.

**AMENDED OPINION**

JOHNSEN, Judge.

¶ 1 The Patient in this case argues we should reverse an involuntary mental-health treatment order on the ground that no witness at the hearing identified her as the subject of the petition for treatment. We conclude a patient in such a proceeding has

no due-process right to an in-court identification and affirm the treatment order.

## FACTUAL AND PROCEDURAL HISTORY

¶ 2 A medical doctor filed a petition for an involuntary mental-health evaluation of Patient. The petition stated there was reasonable cause to believe Patient was a danger to herself and was persistently or acutely disabled. The petition also stated Patient had been diagnosed with schizophrenia and was pregnant. According to the petition, Patient demonstrated "low insight" and "paranoid thoughts," could not form rational ideas and could not provide for her basic needs. Patient was said to have "no insight to her current state" and had burned a hole in the bedding of her hotel room. The petition also stated Patient believed she was being followed and that someone was trying to kill her. In papers accompanying the petition, Patient's case manager asserted that as a result of a mental disorder, Patient was a danger to herself and a danger to others.

¶ 3 After Patient was evaluated, a petition was filed seeking involuntary treatment. In an affidavit accompanying the petition, a psychiatrist who had examined her observed that she was a danger to self, persistently or acutely disabled and that her insight and judgment were "much impaired." The psychiatrist further averred Patient suffered from a severe mental disorder that, if not treated, had a substantial probability of causing severe and abnormal mental, emotional or physical harm that significantly impaired her judgment, reason, behavior or capacity to recognize reality. In a second affidavit, another psychiatrist also concluded that an examination of Patient revealed she was persistently or acutely disabled and required involuntary treatment.

¶ 4 At the hearing on the petition, the parties stipulated to the admission of the physicians' affidavits in lieu of testimony.[1] At the hearing, Patient's counsel announced his presence, saying he was with the "Public Defender's Office, appearing with [Patient]," and "we're ready to proceed." A short time later, just after Petitioner announced its intention to call two case workers to testify, Patient interrupted the proceedings saying, "Excuse me, could I ask my case worker something?"

¶ 5 The first case worker testified as an acquaintance witness. He was asked if he knew "[Patient] who's in the courtroom today," and replied he had known Patient for a month and had seen her twice. He testified Patient appeared paranoid and very disheveled and responded to internal stimuli. The second case worker testified she was assigned to Patient's case and referred to Patient by name multiple times during her testimony. After the close of Petitioner's case in chief, Patient rested without testifying and without calling any other witnesses.

¶ 6 The court found by clear and convincing evidence that Patient was suffering from a mental disorder rendering her persistently or acutely disabled. It ordered Patient to undergo combined inpatient and outpatient treatment for a period not to exceed 365 days. Patient filed a timely appeal. We have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") sections 12–2101 (2003) and 36–546.01 (2009).[2]

## DISCUSSION

¶ 7 Although Patient does not argue on appeal that she is not the woman who was the subject of the petition and the pro-

---

1. Patient does not raise on appeal the issue of her counsel's stipulation to the admission of the physicians' affidavits. Therefore, we need not decide whether before accepting the stipulation, the court should have ascertained that the patient had voluntarily, knowingly and intelligently waived her statutory right to have the physicians testify. See Ariz.Rev.Stat. § 36–539(B) (2009); In re MH 2007–001275, 219 Ariz. 216, 196 P.3d 819 (App.2008). We note that to the extent recent legislative enactments have superseded In re

MH 2007–001275, the case would not apply to matters arising after the effective date of the legislation. See 2009 Ariz. Sess. Laws, ch. 153 (1st Reg. Sess.) (effective September 30, 2009) (amending, inter alia, A.R.S. §§ 36–537(D), – 539(B)).

2. None of the relevant statutes have been amended since Patient's hearing; thus, we cite to the current published version of the statutes.

ceedings in the superior court, she contends the court deprived her of her constitutional due process rights by ordering treatment without requiring an in-court identification of her.[3]

¶8 An individual subject to court-ordered treatment faces "a significant deprivation of liberty that requires due process protection." *In re MH 2007–001264*, 218 Ariz. 538, 539, ¶6, 189 P.3d 1111, 1112 (App. 2008) (quoting *Addington v. Texas*, 441 U.S. 418, 425, 99 S.Ct. 1804, 60 L.Ed.2d 323 (1979)). Due process protections include a "full and fair adversary hearing [ ]." *Parham v. J.R.*, 442 U.S. 584, 627, 99 S.Ct. 2493, 61 L.Ed.2d 101 (1979) (Brennan, J., concurring in part and dissenting in part).

¶9 Patient relies on *State v. Guiliani*, 24 Ariz.App. 530, 540 P.2d 149 (1975), in arguing that involuntary treatment may not be ordered absent an in-court identification. *Guiliani* is a criminal case, however, and we have held that "[a]n action to commit one for mental health treatment is a civil action." *Pima County Mental Health Matter No. MH 863-4-83*, 145 Ariz. 284, 284, 700 P.2d 1384, 1384 (App.1985); *see also* A.R.S. § 36–539(D) (2009) (statutory requirements for the conduct of hearings for court-ordered treatment are in "addition to ... the Arizona rules of civil procedure"). Because this is a civil action, *Guiliani* is inapposite.

¶10 Patient next argues an in-court identification requirement is implied in the law that requires testimony of two acquaintances of the patient. *See* A.R.S. § 36–539(B) ("The evidence presented ... shall include the testimony of two or more witnesses acquainted with the patient at the time of the alleged mental disorder ...."). Because court-ordered treatment "may result in a serious deprivation of liberty ... the statutory requirements must be strictly ad-

hered to." *Coconino County No. MH 1425*, 181 Ariz. 290, 293, 889 P.2d 1088, 1091 (1995). The statute, however, does not mandate an in-court identification, and we decline Patient's request to extend the law to include such a requirement. *In re MH 2004–001987*, 211 Ariz. 255, 258, ¶14, 120 P.3d 210, 213 (App.2005) (quoting *City of Phoenix v. Donofrio*, 99 Ariz. 130, 133, 407 P.2d 91, 93 (1965)).

¶11 Not only is any reference to an in-court identification absent from the statute, we are unaware of any suggestion of such a requirement in the legislative scheme, purpose or history. *See Desert Wide Cabling & Installation, Inc. v. Wells Fargo & Co.*, 191 Ariz. 516, 517, ¶6, 958 P.2d 457, 458 (App. 1998) (courts will not read terms into a statute when no legislative intent is present). Indeed, imposing the requirement Patient seeks would be inconsistent with A.R.S. § 36–539(C), which provides that the court may proceed with a hearing if it finds by clear and convincing evidence that the patient is unable to attend, and with the authority that telephonic testimony may be permitted in court-ordered treatment hearings, *see In re MH 2004–001987*, 211 Ariz. at 259, ¶¶15, 19, 120 P.3d at 214.

¶12 As noted, Patient does not contend she is not the person who was the subject of the petition and the proceedings in the superior court.[4] Nevertheless, our examination of the record finds sufficient evidence that she is that person. *See In re Garcia*, 59 Ill.App.3d 500, 16 Ill.Dec. 684, 375 N.E.2d 557, 559 (1978) (even absent in-court identification, circumstances established patient's identity "beyond any doubt"). As mentioned, the case workers testified they knew Patient through their work and referred to her by name. Although neither witness pointed to Patient for identification purposes, their testimony sufficiently established Patient's identity.

---

3. When an appeal presents a mixed question of law and fact, we defer to the superior court's factual findings but review *de novo* its legal conclusions. *See State v. Gonzalez-Gutierrez*, 187 Ariz. 116, 118, 927 P.2d 776, 778 (1996). We review the interpretation of statutes *de novo*. *In*

*re Jesse M.*, 217 Ariz. 74, 76, ¶8, 170 P.3d 683, 685 (App.2007).

4. We note Patient's counsel introduced her by name at the outset of the hearing, thereby confirming her presence in the courtroom.

## CONCLUSION

¶ 13 For the foregoing reasons, we affirm the superior court's order.

CONCURRING: DONN KESSLER and LAWRENCE F. WINTHROP, Judges.