NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

---

STATE OF ARIZONA, *Appellee,*

*v.*

JERRY J. OSBORNE, *Appellant.*

No. 1 CA-CR 22-0284
FILED 5-23-2023

---

Appeal from the Superior Court in Apache County
No. S0100CR202000226
The Honorable Robert J. Higgins, Judge *Pro Tempore*
The Honorable Michael D. Latham, Judge

**AFFIRMED**

---

COUNSEL

Arizona Attorney General's Office, Tucson
By Mariette S. Ambri
*Counsel for Appellee*

Law Office of Michael S. Penrod, PLC, Snowflake
By Michael S. Penrod
*Counsel for Appellant*

<hr>

**MEMORANDUM DECISION**

Judge Michael J. Brown delivered the decision of the Court, in which Presiding Judge Paul J. McMurdie and Judge Michael S. Catlett joined.

<hr>

**B R O W N**, Judge:

¶1        Jerry J. Osborne appeals his convictions and sentences for continuous sexual abuse of a child and molestation of a child.  For the following reasons, we affirm.

## BACKGROUND

¶2        Osborne lived with his wife, Lisa, in a house beside his automotive shop.  The couple regularly babysat children in the neighborhood, including relatives and family friends.  Between 1998 and 2006, Osborne sexually abused four children, including Emily, his stepdaughter, Claire, the daughter of a family friend, and Julia and George, his niece and nephew through marriage.[1]

¶3        Emily lived with her grandparents but visited the Osborne house on occasion.  During these visits, Osborne repeatedly forced Emily to engage in oral sexual contact, masturbatory contact, digital penetration, kissing, and breast-touching.  Osborne would also use innocent contact, such as piggyback rides, to touch Emily's genitals.  This conduct occurred in Osborne's shop and in his house.  Osborne threatened Emily that if she told anyone, he would hurt her mother or brother.  The abuse spanned several years, starting when Emily was nine years old.

¶4        Osborne and Lisa babysat Claire while her mother worked multiple jobs.  During this time, Osborne repeatedly forced Claire to engage in oral sexual contact, masturbatory contact, kissing, and breast-touching.  He also had Claire sit on his lap while he touched her genitals.  On one occasion, Osborne digitally penetrated Claire's genitals and she "freaked out because it hurt."  When Claire attempted to hit Osborne, he flipped her over and placed an object in her anus.  The abuse occurred in Osborne's shop or living room.  Osborne threatened Claire that if she told anyone, he

<hr>

[1]        We use pseudonyms to protect the privacy of the victims.

would hurt her mother. The abuse ended when Claire, age eight at the time, asked her mother to stop taking her to Osborne's house.

¶5        Osborne and Lisa babysat Julia and George when their parents were separated. During this time, Osborne repeatedly forced Julia to engage in masturbatory contact, kissing, and breast-touching. Osborne had Julia sit on his lap while he touched her genitals and anus. Although Osborne told Julia that "what he was doing . . . was love," he threatened to hurt her and her family if she told anyone about the abuse. The abuse took place in the living room or bedroom and spanned several years, starting when Julia was five years old.

¶6        During the same period, Osborne held George's arm and forced him to penetrate Lisa's genitals digitally. Osborne told George that the abuse was "a way to show [her] love." On a separate occasion, Osborne attempted to force George to engage in the same conduct, and he refused. Osborne slammed George's head into a table, resulting in a visible scar on his forehead. This took place while they were alone in the living room of the house. Osborne told George, age three at the time, not to tell anyone about the abuse.

¶7        In 2006, Julia told her mother about the abuse and they contacted law enforcement. When investigators spoke with Osborne, he claimed that he only engaged in innocent, non-sexual contact with the children in his care and that any touching had been accidental. In 2007, the State charged Osborne with a sexual offense involving Julia, and he pled guilty to reckless child abuse, a class 3 felony. In 2019, George disclosed his abuse to investigators. After hearing this news, Emily reported that Osborne had also abused her. The same year, without knowing there were other victims, Claire disclosed her abuse to investigators. Although Lisa would later testify that she never observed or engaged in any abuse, she admitted to being out of the house regularly during the relevant period.

¶8        The State charged Osborne with multiple offenses involving Emily, Claire, and George.[2] Osborne requested that the court sever the offenses for trial. The State moved to join the offenses involving the three charged victims and admit other-act evidence involving the fourth uncharged victim, Julia, under Arizona Rule of Evidence ("Rule") 404(c). The State argued that evidence Osborne had sexually abused all four

---

[2]        The State charged Osborne with an additional offense involving a fifth victim. The trial court granted the State's motion to dismiss this offense before trial.

victims would be cross-admissible at trial, making the joinder appropriate under Arizona Rule of Criminal Procedure ("Criminal Rule") 13.3(a).

¶9            At a two-day evidentiary hearing, the trial court heard testimony from all four victims.  In a detailed ruling, the court found (1) the State presented sufficient evidence Osborne committed the charged and uncharged acts; (2) the evidence provided a reasonable basis to show he had an aberrant sexual propensity to commit the offenses; and (3) the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice.  In reaching this decision, the court explained that the State presented "reliable evidence" that Osborne "targeted children 12 years of age or younger," the victims were all placed in his care "through family or neighborhood connections," the acts took place in or near his house, the acts occurred once he "managed to isolate the victims," the acts were "similar in nature," and he employed threats to prevent disclosure. The court added that it based this ruling on testimony from "multiple credible witnesses."   Finding that evidence involving the charged and uncharged acts would be cross-admissible if tried separately, the court granted the State's motion to admit Rule 404(c) evidence and, in turn, the motion for joinder.

¶10            The State filed an amended information, charging Osborne with two counts of continuous sexual abuse of a child for Claire and Emily (Counts One and Two), and one count of molestation of a child for George (Count Three), all class 2 felonies and dangerous crimes against children. At trial, the court gave a limiting jury instruction on the other-act evidence, informing jurors they "must decide each count separately on the evidence with the law applicable to it, uninfluenced by your decision on any other count."

¶11            The day before the trial began, the judge spoke with the parties regarding a "possible conflict of interest."[3]  Osborne requested another judge be assigned.  The next morning, the judge provided introductory remarks to prospective jurors, informed the jurors that another judge may be presiding over the trial, and instructed them not to consider the change of judge in their deliberations.  A substitute judge arrived that morning and presided over the remainder of the proceedings. Osborne renewed his objection to consolidating the cases, and the judge

---

[3]      Only the written minute entry summarizing this discussion is part of the record on appeal.  "Where matters are not included in the record on appeal, the missing portions of the record will be presumed to support the action of the trial court."  *State v. Zuck*, 134 Ariz. 509, 513 (1982).

affirmed all previous rulings. Osborne noted that he filed a "very late" motion to admit evidence under A.R.S. § 13-1421(A) and requested a ruling. *See* A.R.S. § 13-1421(A) (allowing evidence of a victim's prior sexual conduct for limited purposes). The State objected, asserting the motion was untimely and evidence of the victims' prior sexual abuse would not be relevant. Although the judge did not make a ruling on the § 13-1421(A) motion, Osborne elicited testimony from both Emily and Julia that they had accused other male relatives of sexual abuse.

¶12        In the State's case-in-chief, Emily positively identified Osborne as the perpetrator. In Claire's testimony, she confirmed that Osborne committed the offenses, and when asked if she still recognized him, responded "[t]hat's him." George testified that "Jerry Osborne is my uncle, not by blood, but through marriage with my Aunt Lisa" and "Jerry" committed the offenses. After the State's case, Osborne moved for a judgment of acquittal under Criminal Rule 20. As relevant here, Osborne argued that Claire and George did not identify him as the perpetrator for Counts One and Three. The State countered that both victims testified that Osborne committed the offenses, contending that Claire "pointed towards" him in her testimony and George identified his perpetrator as his "Uncle Jerry." The trial court denied the motion, finding the victims provided sufficient identification.

¶13        At the close of the trial, the court instructed the jurors that they "must not consider the possible punishment when deciding on guilt." During jury deliberations, the court notified counsel that the foreperson had submitted a note, which stated that Juror One "expressed bias based on consideration of penalty, evidence not presented in court, and personal opinion on what should have been done." Although Osborne was not present for this discussion, his counsel expressed no concerns about Osborne's absence.

¶14        The court proposed, and counsel agreed, that they speak with the foreperson to verify that Juror One refused to follow the court's instructions and expressed bias for one party. The foreperson confirmed that Juror One spoke of concerns regarding the punishment and appeared to harbor bias against the case, but later Juror One began "couching" his rationale differently to the other jurors, saying the State had not met its burden of proof. After further discussion with counsel, the court spoke with Juror One, who denied the claims made by the foreperson. Osborne's counsel argued that because of Juror One's statements, the other jurors needed to be questioned. Each of the remaining jurors agreed with the foreperson, confirming that Juror One made statements about the potential

punishment and one juror noted Juror One appeared to not "trust evidence." After hearing from all the jurors, the State moved to dismiss Juror One. Osborne's counsel objected and argued that Juror One was simply holding the State to its burden of proof. The court dismissed Juror One, finding that the juror "expressed bias based on consideration of penalty." The court brought in an alternate juror and instructed the entire panel to begin deliberations anew.

**¶15**        The jury found Osborne guilty of all counts. The trial court sentenced Osborne to an aggregate term of 57 years' imprisonment. Osborne timely appealed, and we have jurisdiction under A.R.S. § 12-120.21(A)(1).

## DISCUSSION

### A.        Ruling on Rule 404(c) Evidence and Joinder

**¶16**        Osborne argues the trial court failed to make sufficient findings under Rule 404(c), resulting in the improper (1) joinder of offenses involving all three charged victims and (2) admission of other-act evidence. We review the court's rulings on the admissibility of evidence and its ruling on joinder and severance for an abuse of discretion. *State v. LeBrun*, 222 Ariz. 183, 185, ¶ 5 (App. 2009).

**¶17**        When a defendant is charged with a sexual offense, Rule 404(c) allows the trial court to admit evidence that the defendant committed other crimes or acts if such evidence is "relevant to show that the defendant had a character trait giving rise to an aberrant sexual propensity to commit the offense charged." Ariz. R. Evid. 404(c). Before admitting such evidence, the court must find (1) clear and convincing evidence the defendant committed the other act; (2) "[t]he commission of the other act provides a reasonable basis to infer that the defendant had a character trait giving rise to an aberrant sexual propensity to commit the crime charged;" and (3) "[t]he evidentiary value of proof of the other act is not substantially outweighed by danger of unfair prejudice, confusion of issues, or other factors mentioned in Rule 403." Ariz. R. Evid. 404(c)(1)(A)–(C); *see also State v. Aguilar*, 209 Ariz. 40, 49, ¶ 30 (2004). In making a Rule 403 determination, the court must consider, among other factors, the remoteness of the other act, similarity or dissimilarity of the charged offense and other act, the strength of the evidence that the defendant committed the other act, and any other relevant factors. Ariz. R. Evid. 404(c)(1)(C). The court, however, need not find that the other acts are "perfectly similar in order for evidence of them to be admitted under Rule 404." *State v. Lehr*, 227 Ariz. 140, 147,

¶ 21 (2011). Rule 404(c) requires the court to make findings about all three elements, giving "some specific indication" as to why each element was satisfied. *Aguilar*, 209 Ariz. at 50, ¶ 36; *see also* Ariz. R. Evid. 404(c)(1)(D).

**¶18** When separate offenses are joined based on having "the same or similar character," a defendant is entitled to severance "unless evidence of the other offense or offenses would be admissible if the offenses were tried separately." Ariz. R. Crim. P. 13.3(a)(1), 13.4(b); *see also State v. Stuard*, 176 Ariz. 589, 596–600 (1993) (stating that introducing joined evidence does not result in prejudice if cross-admissible for any evidentiary purpose). When a defendant has committed separate sexual offenses against multiple victims, the offenses may be joined if evidence to prove each offense would be cross-admissible under Rule 404(c). *LeBrun*, 222 Ariz. at 187, ¶ 15.

**¶19** Osborne argues the trial court erred by failing to make a specific probative value determination under Rule 404(c) and thus erred in joining the offenses for trial. The record shows, however, that the court found each element under Rule 404(c) had been satisfied. The court also supported its findings with sufficient reasoning to explain why the probative value of the evidence involving each victim was not substantially outweighed by the danger of unfair prejudice, confusion of issues, or other factors listed in Rule 403. *See* Ariz. R. Evid. 404(c)(1)(C)–(D). The court's basis for its ruling included the shared circumstances of the offenses, including the age of the victims, mode of access to the victims, nature and location of the abuse, and use of threats to prevent disclosure. And the court made its decision based on what it considered to be reliable, credible witness testimony. *See Aguilar*, 209 Ariz. at 50, ¶ 35 (holding that findings under Rule 404(c) rest "largely on the credibility of the witnesses."). To the extent the offenses differed, they need not be "perfectly similar" to be cross-admissible. *See Lehr*, 227 Ariz. at 147, ¶ 21. In light of the evidence before it, the court did not err in finding the evidence for each offense cross-admissible under Rule 404(c) and granting the State's motion for a joinder.

**¶20** Osborne's contention that the trial court failed to make a separate finding for the uncharged victim under Rule 404(c) similarly fails. Before making its ruling, the court heard two days of witness testimony, including Julia's testimony regarding the uncharged or other-act evidence. The court provided a detailed basis for finding that evidence of all offenses, including the other-act evidence, would be cross-admissible if each charged offense were tried separately. Namely, the court properly found that the acts Julia endured at the hands of Osborne fit within the pattern of abuse experienced by the charged victims. *See* Ariz. R. Evid. 404(c)(1)(C). Though

part of a simultaneous finding, the court adequately considered the relevancy of the other-act evidence and provided sufficient detail for this court to review its decision. *See Aguilar*, 209 Ariz. at 49, ¶ 31 (recognizing the purpose behind the findings requirement in Rule 404(c) is to ensure "only truly relevant other acts are admitted" and to allow "an appellate court to effectively examine the basis for the trial judge's decision"). The court made the necessary findings under Rule 404(c). Osborne has shown no error.

**¶21** Even if an error occurred, the trial court's other-act and separate-count jury instructions mitigated any risk of prejudice. *See State v. Prince*, 204 Ariz. 156, 158–60, ¶¶ 9–10, 17 (2003) (holding a defendant is not prejudiced if the jury is properly instructed on the limited use of other-act evidence and that they must consider each offense separately).

### B. Change of Judge

**¶22** Osborne argues that the change of judge on the first day of the trial constituted reversible error. Because Osborne raises this issue for the first time on appeal, we review only for fundamental error. *State v. Escalante*, 245 Ariz. 135, 140, ¶ 12 (2018). Under that standard, Osborne bears the burden of showing that error occurred, the error was fundamental, and, if the fundamental error was not "so egregious that he could not possibly have received a fair trial," that the error resulted in prejudice. *Id.* at 142, ¶ 21.

**¶23** A defendant in a criminal case is entitled to the same judge "throughout the entire proceedings against him." *State v. Jones*, 6 Ariz. App. 26, 28 (1967). A change of judge, however, is permitted if "the substitute judge becomes completely familiar with the entire case." *Id.* If a judge is successfully challenged for cause or as a matter of right, that judge should not proceed further in the action. Ariz. R. Crim. P. 10.1(b)(2), 10.2(b)(3). We will not find prejudice, however, where the judge performed "merely a ministerial duty" and the conduct did not rise to the level of "judicial participation." *State v. Schrock*, 149 Ariz. 433, 439 (1986).

**¶24** Osborne has failed to demonstrate prejudice. The record shows that the challenged judge discussed a potential conflict of interest the day before the trial, and Osborne requested a substitute judge. It is unclear from the record whether Osborne provided a specific basis for this request or challenged the judge for cause or as a matter of right. *See* Ariz. R. Crim. P. 10.1(a)(1), 10.2(a)(1). The next day, Osborne made no record of his request for a change of judge and did not object when the challenged judge

provided introductory remarks to the prospective jurors. The challenged judge instructed the jury not to consider the substitution during deliberations, and the substitute judge presided over the substantive portions of jury selection and all remaining proceedings. *See State v. Payne*, 233 Ariz. 484, 518, ¶ 151 (2013) ("Absent evidence to the contrary, we presume the jury followed the instructions."). Without more, the challenged judge's brief remarks to prospective jurors did not rise to the level of fundamental, prejudicial error. *See Schrock*, 149 Ariz. at 439.

**¶25** Insofar as Osborne claims the substitute judge failed to adequately familiarize himself with the case, the record does not support this contention. Osborne has not shown that any of the previous rulings by the challenged judge, later affirmed by the substitute judge, were made in error. The substitute judge presided over the trial, displaying a knowledge of the facts and applicable law. While the substitute judge did not formally rule on Osborne's motion to admit evidence under A.R.S. § 13-1421(A), the judge allowed defense counsel to question the victims regarding prior allegations of sexual abuse involving other male relatives. Osborne has not established that the substitution prevented him from receiving a fair trial or resulted in prejudice.

### C. Sufficiency of the Evidence for Counts One and Three

**¶26** Osborne challenges the sufficiency of the evidence as to Counts One and Three, asserting the victims of those offenses failed to identify him as the perpetrator at trial. We review the sufficiency of the evidence de novo, viewing the evidence in a light most favorable to sustaining the verdict. *State v. Bible*, 175 Ariz. 549, 595 (1993).

**¶27** In considering the sufficiency of the evidence, we look to whether the record contains "substantial evidence to support a conviction." Ariz. R. Crim. P. 20(a)(1); *State v. West*, 226 Ariz. 559, 562, ¶ 14 (2011). Substantial evidence is that which "reasonable persons could accept as adequate and sufficient to support a conclusion of defendant's guilt beyond a reasonable doubt." *State v. Jones*, 125 Ariz. 417, 419 (1980). A conviction may be proven "by circumstantial evidence alone." *State v. Burton*, 144 Ariz. 248, 252 (1985). A witness's identification of the defendant as the perpetrator need not "be made positively or in a manner free from inconsistencies. It is the function of the jury to pass upon the strength or weakness of the identification." *State v. Dutton*, 83 Ariz. 193, 198 (1957) (citation and internal quotation marks omitted).

¶28        For Count One, Claire testified that Osborne sexually abused her, she knew him as a family friend, she went to his house regularly, and she still recognized him.  The record shows that Claire signaled, "[t]hat's him," during her trial testimony.  For Count Three, George testified that Osborne sexually abused him, he knew him as his uncle, and he went to his house regularly for a number of years.  In other portions of the State's case-in-chief, other witnesses positively identified Osborne as the accused perpetrator.    While  Claire  and  George  did  not  provide  formal identifications of Osborne, the State presented sufficient evidence identifying him as the perpetrator of the offenses. *Cf. State v. Guiliani*, 24 Ariz. App. 530, 533 (1975) (finding a witness's identification of a defendant insufficient where the witness did not testify that she believed the defendant was "the person [she] saw commit the crime" and there was "no other evidence to connect defendant with the crime charged").  To the extent the State could have done more to establish identity, it is for the jury to weigh the evidence of a "less than positive" identification. *See State v. Mendibles*, 5 Ariz. App. 463, 465 (1967).  Thus, sufficient evidence supports the victims' identification of Osborne as to Counts One and Three.

## D.        Communication with Jurors

¶29        Osborne asserts that the trial court erred by communicating with deliberating jurors outside his presence, violating his right to be present at every stage of the trial.  Osborne failed to raise this issue below, so we review solely for fundamental error resulting in prejudice. *Escalante*, 245 Ariz. at 140, 142, ¶¶ 12, 21.  To warrant reversal, Osborne "bears the burden of showing first that the missed proceeding was of the type he has a constitutional right to attend and, second, that his absence deprived him of a substantial right to defend himself and resulted in actual prejudice." *State v. Dann*, 205 Ariz. 557, 572, ¶ 56 (2003).

¶30        A defendant in a criminal case generally has the right to be present in the courtroom during proceedings in his case.  U.S. Const. amends. VI, XIV; Ariz. Const. art. 2, § 24; Ariz. R. Crim. P. 19.2.  This right, however, applies only to proceedings in open court when the defendant's "presence has a relation, reasonably substantial, to the fullness of his opportunity to defend against the charge." *State v. Christensen*, 129 Ariz. 32, 37 (1981) (citations and internal quotation marks omitted).  A defendant's constitutional right to be present does not extend to a purely procedural hearing, which may include inquiries into juror prejudice. *United States v. Gagnon*, 470 U.S. 522, 524–27 (1985) (concluding that an inquiry concerning juror prejudice, conducted outside the defendant's presence, did not violate his right to be present at every stage of trial).

¶31      Osborne has failed to show that his absence impacted a substantial right to defend himself resulting in prejudice. Osborne's counsel was present throughout the trial court's communication with deliberating jurors. Counsel provided feedback to the court throughout the discussions, making reasoned suggestions and objecting to the dismissal of a juror for prejudice. Nothing from the record shows that Osborne's absence from the proceedings impacted counsel's decisions or his defense of Osborne's case. *See Dann*, 205 Ariz. at 574, ¶¶ 65–66 (finding any error was not fundamental where the defendant failed to show his absence for discussions regarding juror dismissal impacted his defense).

### E.      Dismissal of Juror One

¶32      Osborne argues the trial court erred by dismissing a juror during deliberations without a valid basis, claiming the court deprived him of the right to a fair and impartial jury. "The matter of excusing jurors is committed to the sound discretion of the trial court and, absent clear and prejudicial abuse of that discretion, its determination will not be disturbed on appeal." *State v. Milke*, 177 Ariz. 118, 122 (1993).

¶33      Although a defendant in a criminal case is entitled to a fair and impartial jury, "he is not entitled to be tried by any particular jury." *State v. Arnett*, 119 Ariz. 38, 50 (1978). If the record does not affirmatively establish that the dismissal of a juror resulted in a biased jury, we will not reverse. *Id.* Criminal Rule 18.5(j)(3) gives trial courts broad discretion in dismissing "a deliberating juror 'due to inability or disqualification to perform required duties,' and to substitute an alternate juror." *State v. Kolmann*, 239 Ariz. 157, 162, ¶ 17 (2016) (quoting the previous version of Ariz. R. Crim. P. 18.5(j)(3)). When the court dismisses a deliberating juror based on an "inability or disqualification to perform the required duties," the court may substitute the juror with an alternate as long as the jury is instructed "to begin its deliberations anew." Ariz. R. Crim. P. 18.5(j)(3). In Arizona, jurors must not consider punishment in rendering their verdict. *State v. Burnetts*, 80 Ariz. 208, 212 (1956).

¶34      Nothing in the record supports Osborne's contention that the dismissal of Juror One resulted in a biased jury. The trial court acted within its discretion in questioning jurors to determine whether Juror One was following its instructions. Except for Juror One's own denial, all other jurors confirmed that he expressed concerns regarding the potential punishment in the case. Based on this information, the court properly found that Juror One's consideration of the punishment disqualified him as a deliberating juror, replaced him with an alternate, and instructed the jury

to begin deliberations anew. *See* Ariz. R. Crim. P. 18.5(j)(3); *Burnetts*, 80 Ariz. at 212.

**¶35**     Finally, Osborne's reliance on *United States v. Symington*, 195 F.3d 1080 (9th Cir. 1999), is unavailing. In *Symington*, the Ninth Circuit held that "if the record evidence discloses any *reasonable* possibility that the impetus for a juror's dismissal stems from the juror's views on the merits of the case, the court must not dismiss the juror." *Id.* at 1087. Here, the record shows that Juror One expressed a "personal opinion on what should have been done" in Osborne's case. However, the court's ultimate decision was based solely on Juror One's consideration of punishment. Because dismissal did not stem from Juror One's views on the case's merits, Osborne has not shown that the court abused its discretion.

## CONCLUSION

**¶36**     We affirm Osborne's convictions and sentences.

